## Case No. 3,824.

### Ex parte DES ROCHERS.

[1 McAll. 68.] [1]

Circuit Court, California.[2] July Term, 1856.

#### HABEAS CORPUS—FEDERAL COURTS.

The circuit courts and federal judges have the power to apply the writ of habeas corpus to all cases which it would reach at common law, provided it is not issued to any person in jail, unless confined under or by color of the authority of the United States.

This is an application for a writ of habeas corpus. The applicant states himself to be an alien, and a subject of Napoleon III., emperor of the French. That he has an action at law pending in the supreme court of this state, in which he is plaintiff, and the county of San Francisco is defendant, for the sum of sixteen thousand dollars; and delay in the decision thereof is a great injury to him. That said suit was argued and submitted to the supreme court of this state, and taken under advisement at the January term, 1856. That the court is composed of three judges, the Hon. Hugh C. Murray, the Hon. David S. Terry, and the Hon. Solomon Heydenfeldt. That by the law organizing said court, the presence of two of the said judges is made necessary to transact business, and their concurrence to pronounce a judgment. That according to law a term of the said supreme court should have been held at the city of Sacramento in this state, in the present month of July, commencing on the first Monday of the month. That one of the judges of said court, the Hon. Solomon Heydenfeldt, has been and still is absent from the state; that the Hon. David S. Terry, another of the judges of said court, is unlawfully restrained of his liberty, against his consent, by certain persons (whose names are given in the petition) in the city of San Francisco, and in the northern district of the state of California, and

[1] [Reported by Cutler McAllister, Esq.]
[2] [District not given.]

held by them in unlawful custody, and is not confined in any jail, nor by the color of authority of any state or of any magistrate thereof; that the said David S. Terry has been so unlawfully restrained of his liberty against his consent since the 21st day of June, 1856, and has been thereby prevented from discharging his duty as one of the judges of the said supreme court in examining and considering the causes which had been submitted in said court, and among others, the said cause of the applicant, and prevented from taking his seat upon the bench of the said court, at the said July term thereof, in consequence of which the said term has not been holden; all which is greatly to the injury of the applicant, by hindering and delaying the consideration and determination of his said suit. He further states that he has been informed, and he believes, that the persons who hold the said David S. Terry in illegal confinement, are about to transfer and convey him beyond the limits of this state and of the United States, illegally and against his will. The application concludes with a prayer for a writ of habeas corpus to the persons named as having the said Terry in illegal restraint.

A. P. Crittenden and D. W. Perley, for petitioner.

McALLISTER, Circuit Judge. The principle which it is the object of this writ to vindicate, has existed from and been consecrated by a remote antiquity. It was embodied in the celebrated edict "De Homine Exhibendo," of the Roman law, existed in the unwritten usages of the Saxon, and found utterance in the great charter of our Anglo-Saxon forefathers. "No freeman shall be taken, or imprisoned, or disseized of his franchises or liberties, &c., unless by the judgment of his peers, or the laws of the land." From the earliest times, says Lord Campbell, "before the habeas corpus act, this writ issued, calling upon the party detaining to show if any just cause existed for the detention." 2 Q. B. 342. At common law, it issued in numerous instances. In one, it was granted on the application of the secretary of a humane society, to bring up the body of a helpless and ignorant female who was being exhibited for money against her consent. In another, for the body of a bastard, under fourteen years of age, to restore it to the mother. Again, it has been issued to bring up an infant who had absconded from its father, and was detained by a third person against his consent; to relieve a wife from the illegal restraint of her husband; to relieve, at the instance of her husband, a wife from illegal restraint; and, upon the application of his friends, to inquire into the legality of an impressment of a party. "It is an immediate remedy for every illegal imprisonment." 1 Watts, 67. In a word, whenever a person has been de-

prived of going when and where he pleases, and restrained of his liberty, he has a right to inquire if that restraint be legal, whether it be by a jailor, constable, or private individual. 2 Ashm. 247, cited in 4 Bac. Abr. 571.

In this country, in the case of U. S. v. Green [Case No. 15,256], the common-law habeas corpus was issued to try the right of custody to an infant. No one will lightly impute usurpation of jurisdiction to the great judge who presided in that case. The question before him, when he ordered the writ to issue, was one of jurisdiction. This could not have been waived even by consent of parties, as such consent could give no jurisdiction to a court of the United States, which is not conferred by the constitution and laws. If the proceeding shows a want of jurisdiction, it is the duty of the court to take notice of it, without waiting for an objection from either party. Cutler v. Rae, 7 How. [48 U. S.] 729. It is difficult even to imagine that Judge Story, through ignorance or willfulness, proved derelict to his duty. The conclusion is, that he entertained no reasonable doubt of jurisdiction, and therefore exercised it. This great writ existed for all remedial purposes, not only anterior to the enactment of the habeas corpus act in England, but prior to the time of magna charta. In the reign of the second Charles, the habeas corpus act was passed to repel the aggressions of the crown and its minions. Those aggressions clothed themselves in the form of legal proceedings in the name of the crown, and hence the terms of the act were limited to persons confined on criminal process. But the habeas corpus brought by our ancestors as their birthright to this country, was the common-law habeas corpus; that great embodiment of a free principle, which, born with the sturdy Roman, preserved by the free Saxon, was so cherished by our immediate sires that they engrafted into our organic law the declaration, "that the privilege of the writ of habeas corpus shall not be suspended unless in case of rebellion," &c. Const. U. S. art. 1, § 9. In the constitution of our own state, and in that of every state of the Union, a similar provision has been with jealous vigilance incorporated. Nor have the representatives of the people of this state been unmindful of the beneficial influences of this great writ. "Every person unlawfully committed, detained, confined, or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment and restraint." Comp. Laws Cal. 167.

In commenting upon the habeas corpus, the supreme court of Pennsylvania, in the Case of Williamson [26 Pa. St. 9] say, "The common law on this subject was brought to America by the colonists. Congress has conferred upon the federal judges the power to issue such writs according to the principles regulating them in other courts." In Ex parte Swartwout, 4 Cranch [8 U. S.] 94, it is said that "for the meaning of the term (habeas corpus), resort may unquestionably be had to the common law; but the power to award the writ by any of the courts of the United States, must be given by written law." The proposition, then, is established, both by federal and state authority, that in determining upon the nature and character of the habeas corpus mentioned in the constitution and judiciary act of the United States, regard is to be had, not to the limits prescribed by the British statutes, but to the more liberal principles in this particular of the common law by which it is regulated. By those principles it was issued in England to relieve any person from illegal restraint. Its operation in this country should not be less beneficent. It remains to consider to what extent the act of congress giving to the federal judiciary the power to issue this great writ has limited and controlled the cases to which, at common law, it confessedly applies. In doing so, we must bear in mind that we are fixing a construction which is to decide whether the federal courts are to extend to or withhold from persons, a great constitutional right, in many cases to which the common law applies.

No law, say the supreme court of the United States, prescribes the cases in which this great writ shall be issued, nor the power of the court over the party when brought up by it. The term used in the constitution is one well understood; and the judiciary act authorizes all the courts of the United States and the judges thereof, to issue the writ for the purpose of inquiring into the cause of commitment. Ex parte Watkins, 3 Pet. [28 U. S.] 201. To the fourteenth section of the judiciary act of 1789 (1 Stat. 73), we must look for the written source of the power of the courts of the United States to issue this writ: "All the before-mentioned courts of the United States shall have power to issue writs of scire facias, habeas corpus, and all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law." A doubt once existed whether the restrictive words, "which may be necessary for the exercise of their respective jurisdictions," did not limit the power to the award of such writs of habeas corpus only as were necessary to enable the federal courts to exercise their respective jurisdictions in some case they were capable of deciding,—or, whether these restrictive words related exclusively to the last and immediately preceding words, "all writs not specially provided for by statute." That doubt has been dissipated by the masterly decision of Chief Justice Marshall, in Ex parte Swartwout, 4 Cranch [8 U. S.] 75, in which it was settled that the words, "which may be necessary for the exercise of their respective jurisdictions," apply only to the writs refer-

red to in the last antecedent clause, thus leaving the writs enumerated, scire facias and habeas corpus, unrestricted, save as limited by the proviso to this section. In allusion to this case of Ex parte Bollman, Id., Conkling, in his treatise, says (page 77, Ed. 1856), "The propriety of the latter construction, indicated by strict grammatical construction, was demonstrated by a masterly reductio ad absurdum;, and it was held also to be strongly corroborated by the thirty-third section of the judiciary act, which gave the power to bring up a prisoner not committed by the court itself to be bailed." It followed from this enactment, as the appropriate process to bring up the party was habeas corpus, that such power was supposed to have been previously given, and that the thirty-third section was therefore explanatory of the fourteenth.

After having given to the courts of the United States the power to issue writs of habeas corpus, the fourteenth section of the act declares that "either the justices of the supreme court or judges of the district courts, shall have power to grant writs of habeas corpus, for the purpose of inquiring into the cause of commitment;" and the second section of the act of congress organizing this court, gives the same power to its presiding officer. 9 Stat. 521. Thus far the unrestricted power is given to issue the writ. By the decision of the supreme court of the United States this is a writ well understood; and in the exercise of the power of issuing it. the courts of the United States must necessarily inquire into its use according to the common law. [Ex parte Watkins] 3 Pet. [28 U. S.] 200. A restriction is interposed, by the proviso to the fourteenth section of the act which gave the general power. It is in these words: "Provided, that writs of habeas corpus shall in no case extend to prisoners in jail, unless they are in custody under or by color of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify." That this proviso extends to the whole section, and limits the powers of both the courts and judges, there can be no doubt. Its evident object, and a most salutary one, was to prevent any possible conflict between the federal and state tribunals, which would result from leaving in the former the power to relieve persons confined in jail by state courts and state magistrates. Such view seems to have been taken by Judge Kane, in the case of U. S. v. Williamson [Case No. 16,726], and in the same case by the supreme court of Pennsylvania [26 Pa. St. 9]. In that case a writ of habeas corpus had been issued by the district judge of the United States for the eastern district of the state of Pennsylvania. The respondent having made an evasive return, was committed for the contempt. He was subsequently brought before the supreme court of the state of Pennsylvania. Among others, his discharge was moved for on the ground that the dis-

trict judge had no jurisdiction or power to issue the writ. To this objection the court say: "The act of congress of September 24, 1789, gives the court power to issue writs of habeas corpus, &c., and the same act expressly authorizes the judge of that court to grant writs of habeas corpus for the purpose of inquiring into the cause of commitment, provided that such shall in no case extend to persons in jail, unless where they are in custody under the authority of the United States," &c. "And it does not appear that the writ of habeas corpus issued for persons in jail, or in disregard of state process or authority." It was on this ground that the Pennsylvania court very justly sustained the jurisdiction of the district judge. While it is evident that the proviso to the fourteenth section, limits equally the powers of the courts and judges (admitted to do so by the court in the Williamson Case), it by no means follows that equalizing and restricting their powers as to persons in jail, has denuded them of all powers, where they have jurisdiction of the parties, to relieve from illegal restraint, save in cases where the suffering parties are in jail under authority of the United States. The proviso simply inhibits them from sending the writ to any persons in legal custody in jail, unless there under the authority of the United States. The alien, or citizen of another state, who is restrained of his liberty by lawless men, who is under no legal restraint, has a right to appeal to the laws of the country for relief. If in jail, or legal custody not under color of authority of the United States, he is remitted to those laws which placed him there. This is, in my opinion, the true construction of the proviso, in which I am confirmed by the action of Judge Story, and by the opinions of the district judge of the district court of the United States for the Eastern district of Pennsylvania, and the supreme court of that state. It was in the exercise of this jurisdiction that Judge Kane issued the writ in the Williamson Case. Speaking of the common-law habeas corpus, he says, "The writ issues here, as it did in Rome, whenever it is shown by affidavit that its beneficial agency is needed. It would lose its efficiency if it could not issue without a petition from the party himself, or some one whom the party had delegated to represent him. His very presence in court to demand the writ, would in some sort negative the restraint which his petition must allege. In the most urgent cases, those in which delay would be disastrous, forcible abduction, secret imprisonment, and the like, the very grievance under which he is suffering precludes the possibility of his applying in person. The American books are full of cases—they are within the experience of every practitioner at the bar—in which the writ has issued at the instance of third parties, who had no other interest or right in the matter than what man concedes to sym-

pathy with the oppressed." U. S. v. Williamson [Case No. 16,726]. These views are as sound law as they are eloquently expressed. In the case at bar, the applicant is an alien resident in this place; is not only interested in the matter to the extent that man concedes to sympathy with the oppressed. but is pecuniarily interested to a large amount. The party illegally deprived of his liberty is not in jail, nor in any custody known to the law, but held in restraint against his will, and in direct violation of those laws. It is, therefore, ordered that the writ of habeas corpus do issue as prayed for.

The writ was not served, the party in confinement having been released the night before the writ was to have been served.