STATE *ex rel.* MISSOURI MUTUAL LIFE INSURANCE COMPANY, Petitioner, *v.* WYLLIS KING, Superintendent of the Insurance Department of Missouri, Respondent.

1. *Insurance companies — Act of March 10, 1869 — Real estate securing stock of companies formed under, limited to Missouri.* — It was the intention of the act of March 10, 1869, concerning life insurance (Sess. Acts 1869, p. 32, § 19), that the security given by insurance companies to the superintendent of the insurance department, to enable them to do business, should be founded on unencumbered real estate situated in Missouri.  This construction is borne out by sections 34 and 35, under which foreign insurance companies doing business in this State must obtain from the commissioners of their own States guarantees as to the solvency of the securities given by them.

2. *Statute, construction of — Intention should be carried out.* — Generally, where words used in a statute are clear and unambiguous, there is no room left for construction; but when it is perceived that a particular intention, though not precisely expressed, must have been in the mind of the legislator, that intention will be enforced and made to control the strict letter.

*Petition for mandamus.*

*Ewing & Holliday,* and *Moss & Sherzer,* for relator.

*Hitchcock & Lubke,* for respondent.

WAGNER, Judge, delivered the opinion of the court.

The relator, a corporation organized under the laws of this State, in compliance with an act for the incorporation and regulation of life assurance companies, approved March 10, 1869,

tendered to the respondent, who is superintendent of the insurance department, $100,000, in notes secured by deeds of trust on unencumbered real estate worth at least double the amount loaned. Included in this amount was a note of one Rufus Ford for $6,750, secured by a deed of trust on unencumbered real estate situated in the State of Illinois. The respondent refused to receive this security of Ford, and refused to give the proper certificate of deposit, and a certificate authorizing the relator to transact business, for the reason, solely, that the real estate was situated in Illinois, and that, under the law, he had no authority to receive notes or bonds that were secured by deeds of trust on real estate lying elsewhere than in the State of Missouri. This is the only question presented, viz : whether, under the law relating to insurance, the notes and bonds to be deposited with the superintendent must be secured on unencumbered real estate situated within our own territorial limits ; or whether the property, providing that it is unencumbered, may be situated elsewhere.

The law on which this contest arises is the nineteenth section of the act for the incorporation and regulation of life assurance companies. (Sess. Acts 1869, p. 32.) Among other things, that section provides that " no joint-stock or stock and mutual company formed under the provisions of this act, or of any general or special law of this State, for any purpose mentioned in the first section of this act, shall commence or hereafter continue to do business or issue policies unless upon an actual capital of at least $100,000 ; nor shall any such company commence or hereafter continue to do any business unless the full amount of capital stock named in its charter or articles of association shall have been in good faith subscribed, nor until such company shall have at least $100,000 of its capital paid in and invested in stocks or bonds of the State of Missouri, or in treasury notes or stocks of the United States, or in notes or bonds secured by mortgages or deeds of trust on unencumbered real estate worth at least double the amount loaned thereon," etc.

It must be conceded that the law is indefinite as to any designation in regard to where the land shall be situated. The only positive requirement is that the real estate shall be unencumbered,

and worth at least double the amount loaned thereon. But what was the intention of the law-makers? It is generally true that where words used in a statute are clear and unambiguous there is no room left for construction; but when it is plainly perceivable that a particular intention, though not precisely expressed, must have been in the mind of the legislator, that intention will be enforced and carried out, and made to control the strict letter. The very frame-work of the insurance law, and object in passing it, was to afford ample protection and indemnity to the policy-holders. One of the means of securing this protection was by depositing notes or bonds on unencumbered real estate. The duty necessarily devolves on the superintendent of judging of the sufficiency of these securities. It was reasonably supposed that the superintendent would have a tolerably accurate opinion as to the value of lands in Missouri, or at least the means would be accessible to enable him to form a judgment. But by what means could he form any idea as to value if the lands are situated in another jurisdiction? Where they happen to lie in immediate proximity to this State, there might be no difficulty; but if it is admitted that they may be situated elsewhere, no limits can be prescribed or imposed. Upon the presentation of the notes or bonds, with the evidence that they are secured upon unencumbered real estate, the superintendent would be bound to receive them and issue appropriate certificates. The lands might even lie in a foreign dominion; for, if there is no authority to restrict them to Missouri, there is an equal absence of authority for saying that they shall be embraced in the territories of the United States. But even admit that the real estate must be situated within the boundaries of the general government, the case would still be no better. Notes or bonds might be presented, secured by mortgages or deeds of trust on lands situated on the extreme slopes of the Pacific, or in Utah, Colorado, or Florida. By what means could the superintendent judge of their sufficiency? He has no power to employ agents or attorneys to investigate the matter, and it would be impracticable if he had. The liability to deception, fraud, and imposition would be great; and the very purpose which led to the enactment of the law—namely: to supply a solid

19—VOL. XLIV.

and substantial basis, to which policy-holders could look for indemnity and security — would be evaded and defeated. My opinion is that it was the intention of the act that the security should be founded on unencumbered real estate situated in Missouri. This construction seems to derive aid from the thirty-fourth and thirty-fifth sections of the same act, where provision is made in regard to the deposit of securities by foreign insurance companies in the States where they are chartered. In such cases the companies doing business here, before they are authorized to transact business, must file with the superintendent of the insurance department of this State the certificate of the commissioner or superintendent, or chief financial officer in the State where the deposit is made, stating that he holds in trust and on deposit, for the benefit of all the policy-holders of such company, the notes, stocks, and securities required; and stating the kind of such notes, stocks, and securities, and the amount of each, and that he is satisfied they are worth $100,000. .These provisions show that it was intended in all cases that the commissioners or superintendents should have knowledge not only of the amount but of the solvency of the securities. But the superintendent can not obtain this knowledge; and his office is rendered inefficient unless the law be so construed as to bring the means of investigation within his jurisdiction.

The writ to compel respondent to receive the note of Ford, and to issue the certificates, should be denied. The other judges concur.