HUMES v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Constitution**: RAILROADS: DOUBLE DAMAGE ACT. Section 43 of the railroad law, (Wag. Stat., p. 310,) making railroad corporations liable in double damages for stock killed by their engines and cars in consequence of failure to erect and maintain fences as therein required, is not repugnant to section 20 of article 2 of the constitution of Missouri of 1875, which declares " that no private property can be taken for private use with or without compensation, unless by the consent of the owner." Nor is it repugnant to section 53 of article 4 of that constitution which provides that " the general assembly shall not pass any local or special law      *      *      granting to any corporation, association or individual any special or exclusive right, privilege or immunity."

2. ——— : ———. The constitutionality of the double damage act, both as regards the State and Federal constitutions, re-affirmed.

3. **Appeals from St. Louis Court of Appeals**: CONSTITUTIONAL QUESTIONS: JURISDICTION. In cases in which appeals lie from the St. Louis court of appeals, only because constitutional questions are involved, the Supreme Court has jurisdiction to consider those questions only.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Thos. J. Portis* for appellant.

The statute under which this suit was instituted, and by virtue of the provisions of which the judgment was rendered is in conflict with the constitutions of Missouri and of the United States. (1) The powers of the legislature in this State are expressly limited by the constitution of 1875. Const., art. 4, § 1. The law in question violates section 20 of article 2 of the constitution, which declares " that no private property can be taken for private use with or without compensation, unless by consent of the owner." There was no such provision in the constitution of 1865. Cooley's Const. Lim., (3 Ed.) 357; *Taylor v. Porter*, 4 Hill 140; *Osborn v. Hart*, 24 Wis. 91; *Bloodgood v. Railroad Co.*, 18

| | |
|---|---|
| 82 | 221 |
| 103 | 56 |
| 82 | 221 |
| 111 | 173 |
| 82 | 221 |
| 115 | 322 |
| 82 | 221 |
| 121 | 68 |
| 82 | 221 |
| 128 | 443 |
| 82 | 221 |
| 130 | 299 |
| 82 | 221 |
| 134 | 528 |
| 82 | 221 |
| 154 | 464 |
| 82 | 221 |
| f156 | 241 |
| f156 | 242 |
| f156 | 387 |
| 82 | 221 |
| 162 | 617 |
| 162 | 618 |
| 82 | 221 |
| 170 | 604 |

Wend. 59; *Dickey v. Tennison*, 27 Mo. 374; *County Ct. v. Griswold*, 58 Mo. 193; *People v. Morris*, 13 Wend. 328; *Sadler v. Lanham*, 34 Ala. 320; *Lane v. Dorman*, 3 Scam. 288; *In re Albany Street*, 11 Wend. 149; *People v. White*, 11 Barb. 30.   (2) The law involved here is, also, in conflict with article 2, section 30 of the constitution of 1875, which provides " that no person shall be deprived of life, liberty or property without due process of law.   Cooley's Const. Lim., (3 Ed.) p. 352; *Hoke v. Henderson*, 4 Dev. 15; *Taylor v. Porter*, 4 Hill 140; *Jones v. Perry*, 10 Yerg. 59; *Ervine's Appeal*, 16 Pa. St. 256; *Lane v. Dorman*, 3 Scam. 238; *Reed v. Wright*, 2 Greene (Ia.) 15; *Comm. v. Byrne*, 28 Gratt. 165; *Dartmouth College v. Woodward*, 4 Wheat. 519; 4 Wheat. 235; 60 Me. 509; 2 Yerg. 260; 23 Wis. 478; 13 N. Y. 432; 5 Nev. 302; 20 Wall. 663; 6 Otto 101.   (3) The law is also in conflict with article 4, section 53 of the constitution of 1875, which declares that " the general assembly shall not pass any local or special law authorizing the granting to any corporation, association or individual any special or exclusive right, privilege or immunity.   *A. & N. R. R. Co. v. Baty*, 6 Cent. L. J. 148; Cooley's Const. Lim., 392; *Vanzant v. Waddell*, 2 Yerg. 260; *Ervines' Appeal*, 16 Pa. St. 266.   (4) The act is unconstitutional in that if it is a penal statute, (*Barret v. Railroad Co.*, 68 Mo. 56,) the whole amount of the penalty recovered on it is diverted from the school fund to which it belongs under article 2, section 8 of the constitution.   *Dutton v. Fowler*, 27 Wis. 427.   (5) It is in conflict with the 14th amendment to the Federal constitution.   *County of San Mateo v. Railroad Co.*, 8 Am. and Eng. R'y Cases 21; *s. c.*, 13 Fed. Rep. 782.

*T. K. Skinker*, for respondent.

This cause having come to this court on constitutional questions, the court can consider no others.   *Eyerman v. Blaksley*, 78 Mo. 145; *Montgomery v. Hernandez*, 12 Wheat. 129; *Udell v. Davidson*, 7 How. 769; *Rector v. Ashley*, 6

Wall. 142; *Gibson v. Chouteau*, 8 Wall. 314. The defend-ant waived the right to raise the constitutional questions urged by it as to the double damage act by accepting its corporate existence thereunder. Cooley Const. Lim. (5 Ed.) *181, 182; *Lee v. Tillotson*, 24 Wend. 337; *People v. Murray*, 5 Hill, 468; *Baker v. Braman*, 6 Hill, 47; *Embury v. Conner*, 3 N. Y. 511; *Detmold v. Drake*, 46 N. Y. 318; *Ferguson v. Landram*, 5 Bush. 230; *Dewhurst v. Allegheny*, 95 Pa. St. 437; *Bidwell v. Pittsburg*, 85 Pa. St. 412; *Burlington v. Gilbert*, 31 Iowa, 356. The act (section 43) does not violate section 1, article 14 of the amendments to the Constitution of the United States, nor section 30, article 2, nor section 7, article 11 of the Constitution of Missouri, of 1875. *Barnett v. Railroad Co.*, 68 Mo. 58; *Cummings v. Railroad Co.*, 70 Mo. 570; *Spealman v. Railroad Co.*, 71 Mo. 434. Neither does said 43rd section violate section 20, article 2 of our present constitution. The precise point here made by appellant is that any recovery by a party injured over and above the actual damage sustained is the taking of its property for plaintiff's private use. The constitutional provision invoked cannot refer to the taking of property in satisfaction of a debt or claim for damages, for it makes the right to take it depend on the consent of the owner from which the absurd conclusion would follow that the property of a debtor or wrong-doer could not be taken, except by his consent. When the present constitution was adopted, it had become the settled policy of the State, whenever it appeared to the legislative mind to be necessary to the execution of the laws to give persons injured by their violation an action for double damages, treble damages, or damages assessed on some other basis in excess of those actually sustained. The 43rd section does not violate section 53, article 4, of the State Constitution. 1st. Because it is not a local or special law. 2nd. Because it does not grant to any corporation, association, or individual, any special or exclusive right, privilege, or immunity. *Snyder v. Warford*, 11 Mo. 517. If it named a par-

ticular class, such as farmers, as the sole beneficiaries of its provisions, it would probably not be unconstitutional. Class legislation is not necessarily unconstitutional. If it were our mechanic's lien laws, and many others of a similar character, would have to go.  *Davis v. State,* 3 Lea 380. But this section does not go even so far as this.  The benefits of the provisions are open to all—even to railroad companies ; for if a railroad company should own a mule, and he should be killed on the track of another company, the former could recover under this statute.

PHILIPS, C.—This is an action instituted in the circuit court of the city of St. Louis under what is popularly known as the 43d section of the general corporation law of this State, for double damages for killing plaintiff's mule on defendant's railroad.  The plaintiff recovered judgment for $135, which on motion of plaintiff was doubled by the court and judgment entered accordingly.  From this judgment the defendant appealed to the court of appeals where the judgment of the lower court was affirmed *pro forma.* Defendant has brought the case here on appeal.

I.  This court is invited by appellant, in a most elaborate and creditable argument, to again consider and determine the constitutionality of said 43d section.  The constitutionality of this section of the statute was fully considered and affirmed in the case of *Barnett v. Railroad Co.,* 68 Mo. 56, which was followed in *Cummings v. Railroad Co.,* 70 Mo. 570.   But counsel urge these decisions were under the constitution of 1865, quite unlike certain provisions of the constitution of 1875.   The validity of this section under the constitution of 1875 was considered by Judge Hough in the opinion delivered by him in *Barnett v. Railroad Co.,* in so far, at least, as the validity of the law was involved in giving the penalty over and above the actual value of the animal to the owner thereof instead of to the school fund as appellant now insists should be done. So the validity of this section was directly presented under

the constitution of 1875 in the case of *Spealman v. Railroad Co.*, 71 Mo. 434. The opinion in this last case was written by Norton, J., who was an active and prominent member of that convention. The questions presented therein for determination were the effect upon this statute of article 5 of the amendments to the constitution of the United States, which declares that "no person shall be deprived of life, liberty or property without due process of law"; also of article 14 of the Federal constitution which provides that "no State shall deprive any person of life liberty or property without due process of law;" and, also, of article 11, section 8 of the constitution of 1875 of Missouri which provided *inter alia* that "the clear proceeds of all penalties and forfeitures, etc., shall belong to and be securely invested and sacredly preserved in the several counties as a county public school fund." To his opinion from his high vantage ground, I should hesitate to oppose any antagonistic view of my own touching the points decided. By these adjudications I feel bound. No view entertained by me, if dissentient, could avail the appellant. I shall, therefore, discuss only such questions raised by the appeal as are not within the matters so adjudicated by this court.

II. It is now urged that the double liability clause of section 43 is repugnant to section 20 of article 2 of the constitution of 1875 which declares: "That no private property can be taken for private use, with or without compensation, unless by the consent of the owner." This provision, in so many words, was not in the constitution of 1865. It is contended that so much of the damages allowed the owner of property injured by a railroad as exceeds its actual value is, in effect, taken from the company without compensation to it and against its assent. The logic of this argument literally taken, would exempt the company offending from single damages, for it receives no compensation at all where it merely destroys the property of the citizen and gives, presumably, only an enforced assent to making restitution in single damages. It would apply

15—82

with equal force, looking alone to the literal language of the constitution, to any taking of property in satisfaction of any claim for damages.   As the right to take it is made to depend on the consent of the party, the result would follow that the injured party could not recover any damage from the wrong-doer.   We do not think this provision of the constitution was aimed at section 43, or its cognates to be found in the statute.   We can conceive of a more rational purpose in its adoption, predicated of the history of the adjudications by the courts of this State, as well as the current history of the times developing so many devices and schemes by individuals, legislatures and municipalities to obtain private property against the owner's consent for purely private purposes.   It was, for instance, early decided by this court in *Cooper v. Maupin*, 6 Mo. 624, that a right of way from necessity, from one part of claimant's land to another part of the same tract, over the land of another, could not exist.   While in *Snyder v. Warford*, 11 Mo. 513, it was held that a right of way of necessity exists in all cases in which an individual owns land surrounded by other lands excluding him from any public highway, and that the legislature might provide by enactment a mode for securing such right to the individual land owner. And in *Dickey v. Tennison*, 27 Mo. 373, the court held that the legislature could not under the semblance of nominating it " An act to establish a neighborhood road in the county" evade the rule of justice that prevented the taking of private property for private use.   In the course of his opinion, Judge Scott held that the constitutional recognition of the right of eminent domain for the public use gave no implication for the taking of private property for private use.   So the first part of said section 20 of the constitution, in illustration of what Webster said, that " written constitutions sanctify and confirm great principles," declared that " no private property can be taken for private use with or without compensation, unless by the consent of the owner."   But as if recalling the adjudications of this State,

.and the great hardships under the common law limitations under some circumstances, immediately followed up the opening generality of the section with the following: " Except for private ways of necessity and, except for drains and ditches across the lands of others for agricultural and sanitary purposes, in such manner as may be prescribed by law." It was always the common law of the land that private property could not be taken for private use against the owner's consent. It springs from the inviolability of individual right, the encouragement to the acquisition of property by the citizen, the aim and office of every just government. So that the first part of this section of the constitution but emphasized an ancient right and universal principle, while the succeeding portion, so far from extending the operation of the rule to any new objects, enlarged the occasions for the invasion of private property for private use by permitting it under circumstances of doubtful, if not denied, right at common law.

It is among the canons for the interpretation of laws that the intention of the law-maker is often to be deduced from a view of the whole and every part of the instrument or act, taken and compared together. " The real intention, when accurately ascertained, will always prevail over the literal sense of the terms." It is true that a thing which is within the mind and intention of the framers of the law is as much within the statute as if it were within its letter; " and a thing which is within the letter of the statute is not within the statute, unless it be within the intention of the ·····kers." *People v. Utica Ins. Co.*, 15 John. R. 380, 381. So may the letter of the statute be enlarged or restrained according to the true intent of the framers of the law. *Whitney v. Whitney*, 14 Mass. 92, 93; *Riddick v. Governor*, 1 Mo. 147; *State v. Emerson*, 39 Mo. 80; *State v. King*, 44 Mo. 283; *Riddick v. Walsh*, 15 Mo. 519. This intention is to be taken or presumed according to what is consonant to reason and good discretion, and so as neither to embarrass the sovereign power of the State, nor lead to conse-

quences unreasonable and revolutionary.    *Neenan v. Smith,* 50 Mo. 525 ; *State v. Pitts,* 51 Mo. 133; *Conner v. Railroad Co.,* 59 Mo. 285.    It is a well known fact to the eminent lawyers and others composing the convention of 1875 that upon the statute books of this State were a large number of laws evincing the settled policy of the law-making power to give to persons injured damages in excess of the actual loss sustained, whenever and wherever it seemed necessary in the legislative mind to so do in the execution of the laws for the preservation of the public good and the better regulation of the police power.    Among these are the following, furnished by the diligent counsel for plaintiff :

1.    Acts which give the party injured treble damages : For willful injury to the property of a railroad company, R. S., § 808; G. S., 1865, 342, § 41; railroad exacting illegal freight charges, §§ 835, 844; Acts 1875, p. 114, § 5, p. 118, § 14 ; waste by tenant for life or years, § 3107 ; G. S., 743, § 42 ; any wanton waste by tenant, § 3114 ; G. S., 743, § 49 ; certain neglects of duty by clerks of courts, § 2109 ; Acts 1874, p. 26, § 17 ; intentional trespass on real estate, § 3921 ; G. S. 371, § 1.

2.    Acts which give the party injured double damages : For malicious trespass on personal property, § 3928 ; G. S. 380, § 8, willful waste by administrator, 286 ; G. S. 513, § 5 ; evading payment of tolls on turnpike road, § 867 ; Acts 1868, p. 160, § 2 ; certain neglects of duty by recorders, § 3823 ; G. S. 161, § 18 ; same by justices of the peace, § 2847; G. S. 699, § 14; same by clerks of courts, § 2773 ; Acts 1868, p. 59, § 6 : killing or injuring live stock trespassing where there is no fence, § 5655 ; G. S., p. 385, § 6 ; damage to live stock caused by unfenced salt-petre works, § 5668; G. S. 385 § 9 ; certain acts of master of a steamboat, § 4283 ; G. S. 760, § 59; sheriff failing to settle with his county, § 5402 ; G. S. 231, § 43 ; drover driving off another's live stock, § 5469; Acts 1868, p. 80, § 1; failure of finder of lost property to make public discov-

ery of it, § 6276; G. S. 375, § 6; unlawfully selling estray, § 7359; G. S. 390, § 29.

3. Acts which give other measures of recovery:

For steamboat taking cordwood without owner's consent, treble damages and $20, § 4269; G. S. 758, § 45; certain trespasses on real estate, double damages and $5, § 3922; G. S. 379, § 2; willful injury to property of a turnpike company, double damages and $10, § 870; G. S. 347, § 19; unlawfully disclosing contents of a telegram, all special damages and $50, § 887; G. S. 350, § 13; unlawfully refusing to enter satisfaction of a mortgage, all damages sustained and ten per cent. of the mortgage debt, §§ 3312, 3316; G. S. 619 § 15; 620, § 19; failure of constable to execute process, all damages sustained and $10, § 2864; G. S. 702, § 24; failure of officer serving execution to account for proceeds, the full amount of proceeds with interest and damages at 5 per cent per month, § 2403; G. S. 648, § 65; neglect of tobacco inspector to perform his duties, all damages sustained and $50, § 5857; Acts 1871, p. 82, § 5; affixing false label or trademark to merchandise, the damages sustained and $500, § 7547; Acts 1870, p. 74, § 4; overcharge on freight by railroad company or any employe, any sum not exceeding $1,000, including an attorney's fee, § 822; Acts 1872, p. 70, § 4; failure of railroad company to deliver consignments at elevator as ordered by consignor, or at junction or crossing of another road, full value of consignment and $25, §§ 813, 817; Acts 1872, p. 75 §§ 4, 6.

Some of these statutes are old and historic. They are inwoven with the legislative policy of the State. They are grounded in the wisdom of experience. Their long continuance justifies the presumption that the people and their law-makers have found them preservative of the public welfare, and a shield of just protection to private property. Why, therefore, may I ask, in respect of the constitutional provision under consideration and others invoked in this appeal, should the framers of the constitution of 1875, representing as they did, the sovereignty of the whole people,

intend by the general language employed, to sweep away all these sanctioned legislative provisions? Was there any complaint from the constituency to justify it? Any popular demand for it? Any recognized abuse or evil in their application? Is it not reasonable to assume that had it been in the mind of the framers of the constitution to strike so deep and broad into the body of the legislative branch of the state government that they would have done so by the employment of words so direct and pertinent as to have made the purpose unmistakable? Other provisions of the organic act designed to effect radical changes and eliminate existing laws from the statutes, give clear answer to these questions.

III.    It is likewise contended that said section 43 is in conflict with section 53, of article 4, of the constitution of 1875. This provision is as follows: "The general assembly shall not pass any local or special law    *    * granting to any corporation, association, or individual, any special or exclusive right, privilege or immunity, or to any corporation, association or individual the right to lay down a railroad track." It is argued that section 43 is special, that it "is partial and discriminates as between individuals and corporations." Is it just and correct to charge that this statute grants to any "individual any special or exclusive right privilege or immunity?" If it named any individual or preferred any particular number of citizens, and declared that they and no others might maintain the given action, it would be obnoxious to the criticism. But this right of action is given to all the people who may be thus injured. It is given as well to any association of people, and to railroad corporations whose stock may be injured by any railroad. Nor is it just or accurate to say of this statute that "it prescribes a severer punishment against a railroad corporation, owner of a railroad, than an individual owner or partnership owner." As early as 1872 (Laws of 1872, p. 69, § 2) it was enacted by the legislature that: "The term railroad corporation contained in this act shall be deemed

and taken to mean all corporations, companies or individuals now owning or operating, or which may hereafter own or operate any railroad in this state." This was the law when the appellant obtained its charter of incorporation under the general law of the State; and it is the law of the state to-day. R. S. 1879, § 825. It is further alleged against this statute that it is partial and special because it "is directed against railroads alone, while no other common carriers are brought within its operation." Had the legislature deemed it essential to the protection of human life and private property they would doubtless have extended the statute to carriers by coach and water. But as the class of property and human life, protected by this provision of the statute, is not exposed to a like peril incident to coach and water travel, the occasion and necesity for so extending the statute does not exist. Class legislation is not necessarily obnoxious to the constitution. It is a settled construction of similar constitutional provisions that a legislative act which applies to and embraces all persons "who are or who may come into like situations and circumstances" is not partial. *Mayor v. Dearmon,* 2 Snead 104; *Davis v. State,* 3 Lea 379; *Snyder v. Warford,* 11 Mo. 517. As suggested by Cooper, J., in *Davis v. State, supra,* if the construction contended for by the learned counsel should obtain, laws giving mechanic's liens would be interdicted. And we might add, so would the act giving liens to contractors, laborers, etc., against railroads, liens of agisters and keepers of horses, inn and boarding house keepers, as also landlord's liens. This character of legislation as already shown has long prevailed in this State. The courts have repeatedly recognized and sanctioned their validity, until now it would be disruptive to outlaw them. This of course, should not deter the courts from their duty in pronouncing the judgment demanded by a strict and rigid enforcement of the mandate of the constitution, lead where it might. But when the judiciary is confronted with the question of the constitutionality of a solemn act of the legisla-

tive branch of the government, while not shrinking from the responsibility, it should approach its consideration with cautious deliberation. The errors and oppressions of a legislative body are more readily corrected. The people are more potential through the ballot box to reach immediately the evil. The legislature lives for only two years. The process of rectifying the mischief of a misconstruction by the judiciary of the fundamental law is necessarily slow.

Therefore, and wisely, the courts before pronouncing a statute void, demand to be satisfied beyond a reasonable doubt of its vice. So this court has announced. " Both upon principle and authority the acts of the legislature are to be presumed constitutional until the contrary is clearly shown ; and it is only when they manifestly infringe on some provision of the constitution that they can be declared void for that reason. In case of doubt every possible presumption, not directly and clearly inconsistent with the language and subject matter, is to be made in favor of the constitutionality of the act." *State ex. rel. v. Railroad Co.*, 48 Mo. 468 ; *The State v. Able*, 65 Mo. 357. Much of the vigorous argument in this case is directed against the wisdom and policy of the law in question. Some of the strictures upon the abuses it begets in practice may be just. But, as was aptly said by Cooper, J., in *Davis v. State, supra :* " Whether a statute is contrary to the genius of a free people is a question for the legislature, not the judge. It cannot be annulled upon supposed equity, the inherent rights of freemen, or any general and vague interpretation of a provision of the constitution beyond its plain and obvious import."

It is urged by counsel for respondent that the appellant, having accepted its incorporation under the general corporation law of the State, including the 43d section, it is estopped from denying its validity. If the provision can be regarded as a condition proposed by the State in granting the franchise that the incorporator should pay such damage to whover might be so injured, and defendant ac-

·cepted its charter thereunder, there is apparent force in the suggestion. But it is not necessary here to determine this question.

Counsel for the appellant have argued very extensively many imputed errors of the trial court pertaining to the ·sufficiency of the petition and refusal to sustain demurrer to the evidence. These questions are not before us. The .amount of the judgment "in dispute" being less than $2,500, the defendant brings the case here only on the ground that it involves " the construction of the constitution of the United States or of this State." Section 12, article 6, State Constitution. These constitutional questions we have con-·sidered. That exhausts our jurisdiction on this appeal. It follows that the judgment of the court of appeals should .be affirmed. All concur. HOUGH, C. J., absent.