## State *ex rel.* Martin v. Wofford, Judge.

### Division Two, March 13, 1894.

1. **Stenographers:** CRIMINAL COURT OF JACKSON COUNTY: STATUTE. Revised Statutes, 1889, chapter 153, article 5, providing for the appointment and prescribing the duties of "stenographers in courts having jurisdiction in cases of felony in cities of over one hundred thousand inhabitants" applies to the criminal court of Jackson county, held in Kansas City, it having a population of over one hundred thousand inhabitants.

2. **Constitution:** STATUTE: PRESUMPTION. Acts of the legislature are presumed to be constitutional until the contrary plainly appears.

3. **———:** ———: GENERAL LAW. A statute, applicable to all cities of a designated population, is a general law, where it prescribes a rule for future government in all such cities that may in the course of time attain the requisite population and which is not restricted in its provisions to a state of facts then existing nor by provisions not applicable to any other city that may in the future attain the required population.

4. **Statute:** PROSPECTIVE CONSTRUCTION. Statutes are to be construed prospectively unless the contrary is plainly intended.

5. **———:** SPECIAL LAW. An act of the legislature which includes all persons who are in, or who may come into, like situations and circumstances is not a special act.

6. **Stenographers:** STATUTES: REPEAL. Revised Statutes, 1889, chapter 153, article 2, which was passed in 1887 and provides for the appointment and prescribes the duties of stenographers in the circuit courts of counties having more than one hundred thousand and less than three hundred and fifty thousand inhabitants does not repeal article 5, but each article is independent of the other and performs different functions.

7. **Judicial Notice:** CENSUS. Courts will take judicial notice of the official records of the census relating to localities within their jurisdictions.

8. **Right, Enforcement of.** Where a right exists all the means essential to the enforcement of such right are implied.

9. **Statutes:** REPEAL BY IMPLICATION. A statute is not impliedly repealed by the mere enactment of a later one. There must be a positive repugnancy between the two acts to effect that result.

121  61
125  468
121  61
131  5
121  61
133  514
121  61
136  451
121  61
145  270
151  206
121  61
152  477
152  664
121  61
154  404
154  468
154  475
154  477
154  478
121  75
81a  447
81a  448
121  61
160  235
121  61
162  618
121  61
164  54
121  61
166  355
121  61
172  5257
121  61
178  3213

10. **Criminal Practice**: APPEAL: STENOGRAPHER. A defendant who appeals from a conviction of felony in the criminal court of Jackson county is entitled under Revised Statutes, chapter 153, article 5, section 8256, to have the official stenographer transcribe the notes of the evidence and other proceedings and furnish a copy to him at once without payment of the cost therefor in order to perfect his appeal.

11. ———: ———: ———: MANDAMUS. Mandamus will lie on behalf of such defendant against the judge of the criminal court to compel him to make and enforce an order against the stenographer to furnish the required transcript.

## *Mandamus.*

PEREMPTORY WRIT AWARDED.

*Thomas N. Williams* and *Peter Bell* for relator.

(1) The 8256th section of the Revised Statutes of Missouri [Ed. of 1889], amongst other things, provides as follows: "*and provided* that in cases of appeal and on motion for new trial the transcript of the evidence shall be furnished to the defendant upon the order of the court without cost to the said defendant." (2) This transcript must be furnished either by the clerk or the stenographic reporter. (3) The contention that the stenographer was appointed under the act of the general assembly approved the fifteenth of March, 1887 (R. S. 1889, section 8245), and that said act makes the stenographer subject only to the provisions of law applicable to circuit courts of counties having more than forty-five thousand and less than one hundred and fifty thousand inhabitants is unsound. It is a mistake to say that Jackson county, in 1887, was not a city of more than one hundred thousand inhabitants. The census taken by the city in 1885 showed its population to exceed that number. The taking of said census was fully authorized by the act of the legislature of March 28, 1885 (acts pp. 63, 64). Hence, at the time the act of 1887 was passed, and under which the stenographer

was said to be acting, Kansas City had over one hundred thousand inhabitants, and the act of 1881, page 106, section 8256 of Revised Statutes, 1889, was in full force.

*Marcy K. Brown* and *J. J. Williams* for respondent.

(1) Section 8251, Revised Statutes, 1889, has no application to Jackson county. It is the last section of the article referring to stenographers in counties having forty-five thousand inhabitants or less, and therefore does not apply to a county with over one hundred thousand inhabitants. (2) Sections 8234 and 8237, Revised Statutes, 1889, prescribe the duties of stenographers in counties such as Jackson, but neither of these sections anywhere even intimates a power on the part of the court to order the stenographer to transcribe the evidence at the trial for a bill of exceptions except on payment of the fees therefor; but section 8237 does provide that after the bill of exceptions has been settled, the stenographer may be required to file in the office of the clerk of the court certified copies thereof, to be paid for at the time of making the transcript and copy by the party at whose instance the same is made, this amount to be taxed as costs to abide the result of the suit. (3) Section 8234 requires the stenographer to furnish to any person a transcript of evidence upon payment to him of the fees provided in section 8236. (4) If relator is correct, the stenographer at Independence must be "well skilled in the art of stenography" and must have had two years' of actual practice in court reporting, and is a sworn officer of the court, while the stenographer at Kansas City need not possess those qualifications. Sections 8233, 8252, *supra*. (5) If we are correctly advised, the expression "courts having jurisdiction in cases of felony" defines one criminal

court in St. Louis and excludes another. To make a law embrace in its provisions the criminal court of Jackson county, no such circumlocution was necessary; the term "criminal court" defines it. Again, the provision in sec. 8253, directing that the stenographer be paid by the city treasurer, leaves no room for doubt that the law was passed for cities governed as St. Louis is.

GANTT, P. J.—This is a proceeding to obtain a peremptory writ of *mandamus* against the judge of the criminal court of Jackson county, to require him to make and enforce his order against the official stenographer of his court, to furnish relator, without expense to relator, a full, accurate and complete transcript, in legible English, of all the evidence, including each and all the objections thereto with each and all the rulings of the court thereon, and the exceptions taken to the rulings of said court in the cause wherein the state of Missouri is plaintiff and the relator, Philip Martin, is defendant, in the criminal court of Jackson county, and heard, and tried before a jury in said court on the twentieth day of October, 1893.

The petition avers, and shows that Philip Martin, the relator, and one Frank Lyle, were jointly indicted in said criminal court for murder in the first degree; that a severance was granted, and on the twentieth day of October, A. D. 1893, relator was put on his trial before a jury and was convicted of murder in the first degree. Relator further avers and shows to the court, that Kansas City is a city situate in said Jackson county, in the state of Missouri, having a population of over one hundred thousand inhabitants and has a court known and designated, "the criminal court of Jackson county" and that said court has jurisdiction in cases of felony; that the Honorable John W. WOFFORD

is the duly elected, qualified and acting judge of said court and that Jacob B. Young is the duly appointed and acting official stenographer of said court; that on the trial of relator on the twentieth day of October, 1893, for murder as aforesaid, said Jacob B. Young, the said official stenographer was present in court and took full and complete shorthand notes of all the evidence introduced in said trial of said court both on the part of the state and on the part of the defendant together with the objections to the evidence and the rulings of the court thereon, together with the exceptions to the said rulings of the court thereon.

It is further alleged that relator within four days filed his motion for a new trial, which was on the ninth of December, 1893, overruled by said court, to which relator duly excepted, and filed his affidavit for appeal to this court, which was duly granted, and thereupon said court extended the time for filing a bill of exceptions in this cause until the first day of February, 1894, and that afterwards, on the thirty-first day of January, 1894, said time for filing was extended until March 10, 1894. It is then alleged that relator is only nineteen years old, is wholly without means or property of any kind; that in consideration of his poverty, the court appointed him counsel, who has rendered his services without fee or reward; that it is absolutely necessary for relator to have a complete transcript of the evidence given on the trial before he can prepare his bill of exceptions; that he has applied to the stenographer for a copy thereof, and he refuses to furnish the same without being first paid the legal fees therefor; that neither petitioner or his counsel have the means in their power to raise the necessary fees for said transcript; that on the thirtieth day of January, 1894, relator filed his motion supported by affidavits asking

said court to grant further time to your petitioner and to make an order on said official stenographer to furnish relator a full and complete transcript of all the evidence on said trial, together with all exceptions thereto and rulings thereon, without expense to relator, which said motion the court sustained as to extending the time but, having duly considered, on February 6, 1894, overruled and still refused to grant or make said order on said stenographer; that, unless this court shall direct said criminal court to grant said motion and make said order on said stenographer, relator will be without remedy and his appeal useless.

An alternative writ duly issued returnable on the nineteenth of February, 1894, at which time Judge Wofford made a return and filed a demurrer, both of which tender the single issue that, admitting all the facts averred, there is no law by which said judge is empowered to make said order and require of his said stenographer a copy of the said evidence, exceptions and rulings, as asked in the said motion therefor. The return and demurrer of the judge of the criminal court tender an issue of law only.

By an act of the General Assembly of this state, approved March 19, 1881, entitled "An act to authorize the appointment of stenographic reporters *in courts exercising criminal jurisdiction in cases of felony in cities having a population of more than one hundred thousand inhabitants,*" and now incorporated in the Revised Statutes of 1889, under the title of "article 5," of chapter 153, it was provided that "in cities having a population of over one hundred thousand inhabitants, courts having jurisdiction in cases of felony shall have a stenographic reporter, such reporter to be appointed by the court, to hold his office from month to month, during the pleasure of said court, or until removed for cause shown." R. S. 1889, sec. 8252.

By section 8255 said reporter is required to "attend upon said court, as directed by the judge thereof, and shall take accurate shorthand notes of the evidence, proceedings had, instructions given by the court, and arguments made, and all other pertinent matter." In all criminal examinations other than regular trials, he is required to turn over his notes at once to the prosecuting officer. But all other shorthand notes taken by him shall be filed in the clerk's office, and thereby become part of the records of the office and whenever required by the clerk it is made the duty of the reporter to transcribe the said notes in legible English, and it is specially provided "that in cases of appeal and on motions for new trials, the transcripts of the evidence shall be furnished to the defendant upon the order of the court *without costs to said defendant.*" R. S. 1889, sec. 8256.

If this act of 1881 applies to the criminal court of Jackson county, it is very clear that relator's application entitles him to a transcript of the stenographer's notes without cost to him, and to an order of the court for that purpose. And if this provision of said article 5 applies to said court, it is obvious that relator is denied a clear legal right, and has no other specific legal remedy to compel the enforcement of that right, and in such a case *mandamus* is the appropriate, if not the only adequate remedy, and this court, in the exercise of its original jurisdiction, will grant the writ. *State ex rel. v. Tracy*, 94 Mo. 217; *Williams v. Judge*, 27 Mo. 225; *State ex rel. v. Knight*, 46 Mo. 83; *State ex rel. v. Philips*, 97 Mo. 331.

It stands confessed by the return and demurrer that Kansas City has a population of more than one hundred thousand inhabitants. The act creating the criminal court of Jackson county (Laws, 1871, p. 110), as amended, requires that three terms of said court shall

be held each year in *Kansas City* and two terms in Independence, and gives it jurisdiction in all cases of felony. R. S. 1889, p. 2206. The duty imposed on criminal courts to appoint official stenographers under section 8252, Revised Statutes, 1889, applies to all courts having jurisdiction in cases of felony, "in (all) cities having a population of over one hundred thousand inhabitants," and, hence, this is broad enough to include the criminal court of Jackson county, *held in Kansas City*.

There is no exception in the statute, and nothing that indicates that it was a local or special law, but in the brief of counsel on behalf of the respondent, the judge of the said court, it is said that section 8256 was intended to apply to the city of St. Louis *only*, and here lies the main controversy in this cause, for notwithstanding the population of Kansas City, and the jurisdiction of the criminal court of Jackson county, in felonies, and the requirement that said court shall be held in said city, bring it within the letter of this section, yet, if it was not within the intention of the legislature, it does not apply. *People v. Ins. Co.*, 15 John. 380; *State ex rel. v. King*, 44 Mo. 283; *State ex rel. v. Emerson*, 39 Mo. 80; *Humes v. Railroad*, 82 Mo. 221. Looking, then, for this intention, no rule of construction is better settled than that the acts of the legislature are presumed to be constitutional until the contrary plainly appears. *State v. Able*, 65 Mo. 362; *State ex rel. v. Laughlin*, 75 Mo. 147.

Now, if as respondent contends, article 5 of chapter 153, Revised Statutes, 1889, was intended to apply to the city of St. Louis alone, and to a state of facts then existing, it was, and is, a special law, and falls within the prohibition of section 5, article 4, of the constitution of Missouri; but a statute applicable *to all cities* of a certain population is a general law, when it prescribes a

rule for future government in all such cities as may, in the course of time, reach the requisite population, and is not restricted by its provisions to a state of facts then existing, and not applicable to any other city which may in the future attain that population. *State ex rel. v. Tolle*, 71 Mo. 645; *Dart v. Bagley*, 110 Mo. 42; *State ex rel. v. Herrmann*, 75 Mo. 340; *Wheeler v. Philadelphia*, 77 Pa. St. 338. Acts of the legislature are to be construed as having a prospective operation unless the contrary is plainly manifest.

Now, there is nothing in this act that restricts it to St. Louis, nor is there a provision in it which would not apply as well to one city of one hundred thousand population as another, hence, the act is not open to the charge of being a special law. An act which embraces all persons "who are, or who may come into like situations, and circumstances, is not a special act." *Humes v. Railroad*, 82 Mo. 221.

But it is said that it was clearly intended only to apply where the city was separate from any county, and had an independent municipal government, and that it would be contrary to the use of plain language to speak of "the criminal court of Jackson county," as "*a court in a city* of one hundred thousand inhabitants;" but we are not impressed with the force of this objection. The courts which have jurisdiction to try felonies of every grade in this state, are the courts of the state. They are not the creatures of municipal government or control, and when one of these courts is appointed by law to hold, and does hold, its regular sessions in a city of one hundred thousand inhabitants, it meets every requirement, verbal or substantial, to bring it within the terms of section 8252, as "a court having jurisdiction in cases of felony," "in cities of one hundred thousand inhabitants." In no other way can it be in such a city, nor are we at liberty to

interpolate into the statute a meaning which would render it obnoxious to a constitutional prohibition; on the contrary, it is our duty to give such a construction as will exonerate the legislature from any such intention.

But, independent of these considerations, it is said that sections 8234 and 8237 of article 2, chapter 153, Revised Statutes, 1889, which were enacted in 1887 as new sections, contain the law governing the duties of the stenographer in the criminal court of Jackson county, and that he was appointed under section 8233. This last mentioned section provides that in counties that now have, or may hereafter have a population of more than one hundred thousand and less than three hundred and fifty thousand inhabitants, the judges of the *circuit courts* shall appoint official stenographers for each court *or division of said circuit court,* and provides for his qualifications, the length of his term, and for his removal. His duties are to attend the court, take correct stenographic notes of all evidence and rulings, and preserve the same for future use or reference, and to furnish to any person a transcript of such evidence or oral proceedings upon the payment to him of the fee "hereinafter provided." He is allowed $10 a day, and fifteen cents per folio of one hundred words for each transcript furnished, and if the judge orders a transcript for his own use, the stenographer's fees are taxed as other costs in the case. Nothing is said anywhere in the article with reference to any criminal court or fees in criminal cases.

The claim is that in 1887, when the provisions of article 2 were enacted, Jackson county had a population exceeding one hundred thousand and less than three hundred and fifty thousand inhabitants, but conceding this, it does not follow that this act applies to the stenographer of the criminal court. Among those

matters of which courts will take judicial notice are the official records of the census as to localities within their jurisdiction. Greenleaf on Evidence, sec. 56; *State ex rel. v. Herrmann*, 75 Mo. 340; *Devine v. Commissioners*, 84 Ill. 590. Now, by an act of the general assembly passed and approved March 11, 1885, Kansas City was authorized, by ordinance and at the expense of the city, to cause an enumeration of its inhabitants to be made and its population ascertained, and such census when so taken, should have like force and effect as a state or national census to secure it such incorporation as its population entitled it to under the constitution and laws of this state. Laws 1885, p. 64, sec. 9. In pursuance of the law, an ordinance was duly passed, September 17, 1885, requiring said census to be taken. Under the ordinance, the census was taken, and the population ascertained to be one hundred and five thousand and forty-two inhabitants, and by section 14 of an act approved March 10, 1887, such census "shall be taken by all courts in this state without proof." *State ex rel. v. Dolan*, 93 Mo. 467.

At the time that article 2 of chapter 153, Revised Statutes, 1889, was passed, then Kansas City was a city with a population exceeding one hundred thousand inhabitants. A criminal court having jurisdiction of felonies was organized, and held three of its regular terms in said city. The law regarding the appointment and duties of official stenographers was then in force in this state, and by its terms applied to said court in said city. Did the general act of 1887, which, by its terms, referred *to circuit courts only*, repeal this law made specially for the government of criminal courts? To justify a repeal of a statute by implication by the mere enactment of a subsequent statute, there must be a positive repugnancy between the two acts. *Manker v. Faulhaber*, 94 Mo. 430; *State ex rel. Reid v.*

*Walbridge,* 119 Mo. 383. Now there is no such repugnancy here. Article 2 can stand in full force in all its provisions for the government of the circuit courts, and article 5 govern the criminal courts without the slightest friction. The two systems of courts have become entirely distinct. They are entirely independent of each other, and perform different functions.

But above and beyond this rule of construction, it seems to us that there are other grave reasons for holding that article 5 *supra* was not repealed by article 2. The constitution of this state, article 2, section 10, commands that "the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice should be administered without sale, denial or delay." In all cases of felony in which a defendant has been convicted, an appeal to the supreme court is allowed, if applied for during the term. R. S. 1889, sec. 4277. By article 4 the judge of every circuit or criminal court in counties having a population of forty-five thousand inhabitants or less is empowered to appoint a stenographer for his court. R. S. 1889, sec. 8247. By section 8251, it is provided that in criminal cases when an appeal is taken or writ of error obtained by the defendant, and it shall appear he is unable to pay the costs of a transcript, the court shall order the same to be furnished and the stenographer's fees taxed against the state or county as may appear proper, and in such cases the stenographer is required to furnish two copies, for one of which he receives compensation, and for the other, nothing.

By the census of 1890, there were only four counties in this state outside of the city of St. Louis that contained more than forty-five thousand inhabitants, and it is clear that section 8256 applies in St. Louis. By virtue, then, of articles 4 and 5 of chapter 153, the

state had determined that in the counties and city to which they applied no citizen, however indigent he might be, should be denied a hearing in the last court of appeals before he should be deprived of his life or liberty.

This legislation is in keeping with the spirit and humanity of the enlightened age in which we live, and was in harmony with the constitution, and it emphasizes the rule of law and constitution that when a right exists all the means essential and necessary to the enforcement of that right are implied. *Ex parte Marmaduke*, 91 Mo. 267; *Johnson's case*, 1 Greenleaf (Me.) 230. Surely it was not the intention of the legislature to say that a defendant convicted and sentenced to death in the criminal court of Jackson county was less deserving of consideration, than one convicted of the same offense in Henry, Bates or Cass. To reach such a conclusion the statute should be susceptible of no other construction. It would hardly stand the test of reason to say that a provision like that contained in sections 8251 and 8256, could not be made to apply to every county in the state as well as to one, or in all, except one. *State v. Hayes*, 81 Mo. 574. We are unwilling to attribute to the legislature an intention which to us savors so strongly of favoritism and tends to show that the law is unconstitutional because special legislation.

Much is said about the inconsistencies that would result in the matter of costs, and the power to remove the stenographer. These are minor and secondary considerations, and are not involved here. The stenographer is an officer of the court under all these acts. He is not better than the other officers of the court. By section 4293, it is provided that: "When any appeal shall be taken or writ of error filed, which shall operate as a stay of proceedings, it shall be the duty of the

clerk of the court in which the proceedings were had to make out a full transcript of the record in the cause, including the bill of exceptions, judgment and sentence, and certify and return the same to the office of the clerk of the supreme court without delay." This section was construed in *State ex rel. v. Dailey*, 45 Mo. 153; when it was said it was imperative and personal to the clerk "for the performance of which duty the law imposes upon no one the obligation of advancing the fees." And the same ruling was reaffirmed in *State v. Armstrong*, 46 Mo. 588. Certainly it will be no greater burden on the stenographer to perform his duty than on the clerk, and the clerk *can not perform his duty until the stenographer transcribes* the portion of his record, that is in the notes. Attorneys are appointed to defend poor persons and give their services. Witnesses and jurors give their time and services for mere nominal fees often at great loss and inconvenience to themselves. The clerk of this court in the course of a year files a large number of transcripts for which he receives no docket fee. Section 4985.

The state has adopted this system of stenography. It is very onerous and expensive on litigants who are able to pay for the service, but if it is to result in denying a poor person his appeal, the sooner it is dispensed with, the better. Expedition of public business is desirable, but not at the expense of the substantial rights of litigants. It is no exaggeration to say this system has increased the cost of appeals in this court almost four-fold, with little or no corresponding benefits.

We are of the opinion that section 8256 applies to the criminal court of Jackson county, at its terms held in Kansas City and that relator is entitled to a peremptory writ commanding the judge to require the

official stenographer of said court to transcribe the notes of the evidence and other proceedings as asked and furnish the same without costs to relator Martin at once, in order to perfect his appeal and it is accord-- ingly so ordered. All concur.