# Ex Parte Marmaduke.

1. **Constitution: STATUTE: HABEAS CORPUS AD TESTIFICANDUM: ONE UNDER SENTENCE FOR FELONY: REVISED STATUTES, SECTION 4031: CRIMINAL PRACTICE.** One in custody under sentence for a felony, although competent as a witness, cannot, under Revised Statutes, section 4031, be produced in court, under a writ of *habeas corpus*, for the purpose of testifying in a cause. (Sherwood, J., dissenting).

2. ————: ————: ————: ————. Section 4031, Revised Statutes, provides that "courts of record, and any judge or justice thereof, shall have power, upon the application of any party to a suit or proceeding, civil or criminal, pending in any court of record, or public body authorized to examine witnesses, to issue a writ of *habeas corpus* for the purpose of bringing before such court or public body any person who may be detained in jail or prison within the state for any cause, *except a sentence for felony*, to be examined as a witness in such suit or proceeding on behalf of the applicant." *Held*, that said section 4031, in excepting one under sentence for felony from the operation of the writ of *habeas corpus ad testificandum*, is not in conflict with the constitution, article 2, section 22, which provides that, "in all criminal prosecutions, the accused shall have the right    *    *    *    to have process to compel the attendance of witnesses in his behalf." (Sherwood, J., dissenting).

3. ————: ————: ————: ————. Revised Statutes, 1879, section 4031, *supra*, comes down, it is true, through the revisions of 1855 and 1865, but there is nothing in the revision of 1879 which undertakes to repeal it, and the legislation had in that revision is perfectly consistent with the continued existence of section 4031. There is, therefore, not only no statutory authority for removing a convict from the penitentiary while undergoing a sentence for a felony, for the purpose of testifying in a case, other than where a fellow-convict is charged with a crime (R. S., sec. 1848), but the right of such removal for any purpose is clearly denied. (Per Black, J., concurring).

4. ————: ————: ————: ————. The legislature may determine who shall be competent witnesses, and determine the form of the process by which they shall be brought into court, and make reasonable regulations with respect to the use and method of serving the same. It has the undoubted right to declare that a person

convicted of a felony shall forever be incompetent to be sworn as a witness, and this as a part of the penalty for the infraction of the law, provided only, that such laws are not *ex post facto*, or retrospective, and if it may do this it may make the convict an incompetent witness while undergoing imprisonment, and so the legislature may prohibit his removal from the place of confinement for the purpose of being used as a witness. (Per Black, J., concurring).

5. ———: PROCESS TO COMPEL ATTENDANCE OF WITNESSES. The right to have process to compel the attendance of witnesses must be limited to such persons as, by the laws of the land, are allowed to be produced in court as witnesses. (Per Black, J., concurring).

6. **Writ of Habeas Corpus ad Testificandum.** The writ of *habeas corpus ad testificandum* is a very ancient one, and was grantable at the discretion of the courts, at common law. It was a process whereby the attendance of witnesses was compelled, and was employed to bring them before the court, whether they were in custody awaiting trial or were undergoing sentence. (Per Sherwood, J., dissenting).

7. ———: CRIMINAL COURT OF CITY OF ST. LOUIS. The criminal court of the city of St. Louis has jurisdiction to issue such a writ. (Per Sherwood, J., dissenting).

8. ———: REVISED STATUTES, 1879, SECTION 4031. The exception to the operation of the writ contained in section 4031, Revised Statutes, in cases where the witness is under sentence for felony, is repealed by the provisions of Revised Statutes of 1879, removing the disqualification of persons convicted of crime to testify as witnesses. (Per Sherwood, J., dissenting).

9. **Statutes:** PARTIAL REPUGNANCY: REPEAL. The partial repeal of a statute may be accomplished by a partial repugnancy to another statute, the rule being that the repeal extends only so far as the repugnancy exists, the remainder of the statute being left in full force. (Per Sherwood, J., dissenting).

10. **Constitution:** PROCESS TO ACCUSED TO COMPEL ATTENDANCE OF WITNESSES. The provision of the constitution, that the accused shall have process to compel the attendance of witnesses in his behalf, is co-extensive with the power and boundaries of the state. Wherever the power reaches, the process runs, and no place in the state is exempt from its operation. (Per Sherwood, J., dissenting).

11. **Convicts as Witnesses:** REVISED STATUTES OF 1879. All convicts, convicted after the going into effect of the Revised Statutes of 1879, became competent witnesses by virtue of said revision, and, as such, are amenable to process. (Per Sherwood, J., dissenting).

*Petition for Habeas Corpus.*

PETITIONER DISCHARGED.

*B. G. Boone,* Attorney General, for petitioner.

(1) It is believed that this is the first instance in the judicial history of this state that a court has issued a writ of *habeas corpus ad testificandum* against the warden of the state penitentiary, commanding that officer to produce the person of a convict confined in prison, before the court for the purpose of testifying. Section 4031, Revised Statutes, 1879, is as follows : "Courts of record, and any judge or justice thereof, shall have power, upon the application of any party to a suit or proceeding, civil or criminal, pending in any court of record or public body, authorized to examine witnesses, to issue a writ of *habeas corpus* for the purpose of bringing before such court or public body any person who may be detained in jail or prison, within the state, for any cause, except a sentence for felony, to be examined as a witness in such suit or proceeding, on behalf of the applicant." This section, in the same words here used, appears in the statutes of 1865 and 1855. G. S., 1865, sec. 22, p. 588 ; 2 R. S., 1855, sec. 24, p. 1582. (2) It is contended by the petitioner that the writ of attachment issued by the St. Louis criminal court, and by virtue of which he is held in custody, shows affirmatively on its face that the alleged act of contempt therein complained of does not, in point of law, amount to a contempt, and is reviewable on a writ of *habeas corpus.* R. S., 1879, sec. 2651 ; *Ex parte Goodin,* 67 Mo. 637, and cases cited. Where personal liberty is concerned, the judgment of an inferior court affecting it is not so conclusive but that the question of its authority to try and imprison the party may be reviewed on *habeas corpus* by a superior court or judge having power to award the

writ. *Ex parte Siebold*, 100 U. S. 371, and cases cited ; *Ex parte Clarke*, 100 U. S. 399 ; *Ex parte Virginia*, 100 U. S. 339. Where a party is in custody under an order of the circuit court, for contempt in refusing to answer under such an order, this court will release him by writ of *habeas corpus*, on the ground that the order of imprisonment was without the jurisdiction of that court. *Ex parte Fiske*, 113 U. S. 714, and cases cited. (3) The statute (R. S., 1879, sec. 4031) expressly excepts persons in prison under sentence for a felony from the operation of said section 4031. This section is not in conflict with section 22, article 2, of the constitution. It does not deprive the defendant of any constitutional guaranty. *State v. Underwood*, 75 Mo. 230 ; *State v. Hickman*, 75 Mo. 416 ; *State v. Jennings*, 81 Mo. 185 ; *State v. Able*, 65 Mo. 357 ; *State v. McO'Blenis*, 24 Mo. 402. Section 22, article 2, of the constitution, does not deprive the legislature of the power to provide by law the manner and mode of confining and controlling prisoners, and of enforcing the punishment of those who are convicted of a felony. The legislature has the power to prohibit the service of process on persons confined in the penitentiary. Such persons, after conviction, are solely and absolutely under the control of the state, in such manner as may be provided by the legislature. Such convicts are civilly dead. R. S., 1879, sec. 1667. Section 1378, Revised Statutes, 1879, amending section 66, General Statutes, page 791, omitting the disqualifying clause as to convicts testifying, does not have the effect to repeal the exception contained in section 4031, Revised Statutes, 1879. It does not follow that, because a convict is competent to testify, that, therefore, such convict, while imprisoned and undergoing the punishment inflicted by the sentence and judgment of the court, can be reached with process to compel his attendance as a witness. A reasonable and common-sense construction must be given to the constitution. Story

Const., secs. 400 and 451 ; *Railroad v. Evans*, 85 Mo. 307. It cannot reasonably be supposed that the legislature or constitutional convention intended that a defendant, by virtue of the guaranties secured to him by section 22, article 2, of the constitution, should have the right to suspend and hold in abeyance a solemn judgment and sentence of a court of competent jurisdiction, and to nullify, in whole or in part, the legal punishment incident to, and being, in fact, a part of, that judgment, by taking the party thus sentenced and undergoing the judgment of the court from under the operation of the sentence and transferring him away from the place of confinement and punishment to testify as a witness, or to require the warden of the state penitentiary to unlock the doors of the state prison and take the convicts therefrom to any and all parts of the state, upon the application of any defendant in a criminal cause.

*T. B. Harvey contra.*

(1) The proper process was issued. The writ of *habeas corpus ad testificandum* is of no recent origin. It has been uniformly resorted to for centuries past for the purpose of compelling the attendance of restrained or imprisoned witnesses. As early as in the year 1697, and at a time when the accused was denied counsel, and had only such meager privileges and rights as a harsh and subservient imperial court chose to grant, Lord Chief Justice Holt, upon a suggestion by the defendant that he desired the testimony of a person imprisoned, ordered this writ to be issued, commanding his production in court. See Trial of Sir John Friend, 13 Howell's State Trials, 3. It was recognized and awarded, simply upon motion, prior to the statutes of George III., which authorized the judges of the superior courts of England and Ireland, and justices of oyer and terminer, and jail delivery, to award the writ for imprisoned wit-

nesses in any civil or criminal cause. See Stat. 43, George III., ch. 140; 44, Geo. III., ch. 102; 2 Phillips on Evid. 693; Starkie Evid. [9 Ed.] 106; Conkling's Treat. [3 Ed.] 404; 2 Cooley's Blackstone, bk. 3, p. 129; Russell on Crimes [3 Ed.] 574; *Marsden v. Overbury*, 18 C. B. 34; 25 L. J. C. P. 200; *Graham v. Glover*, 5 El. & Bl. 591; 25 L. J. Q. B. 10; *Geery v. Hopkins*, 2 Ld. Raym. 851; *Rex v. Barbage*, 3 Burr, 1440. And it has been recognized by the United States courts as the proper and only process for compelling the production of imprisoned witnesses, regardless of whether they be federal or state prisoners. *Ex parte Barnes*, 1 Spr. 133; *Ex parte Cabrera*, 1 W. C. C. 232; *Ex parte DeRochers*, 1 McA. 68; *Ex parte Dorrs*, 3 H. 103; s. c., 44; *Elkinson v. Deliesseline*, 2 Wh. Cr. Cas. 56; *Ex parte Hamilton*, 1 Ben. 455; *United States v. Moore*, Wallace Reps. [Phila.] 23; *Ex parte Bollman v. Swartout*, 4 Cranch, 496; also, Paschall's Const. [2 Ed.] p. 265, sec. 261; 1 Greenleaf's Evid. [13 Ed.] sec. 312, and authors cited above. (2) It is the process adopted and resorted to by the various states of the union to compel the attendance of convicts when they are competent witnesses. Stat. Mass. 1882, p. 1070, sec. 29; Stat. Maine, 1883, p. 805, sec. 37; Stat. Ill. 1883 [Cotterans], p. 783, sec. 34; Ind. Rev. Stat. 1881, sec. 1818; Laws of Ohio [Rev. 1880], sec. 7290; American Stat. Law [Stinson], p. 29, and the list of state constitutions guaranteeing process to compel the attendance of witnesses. (3) The state of Missouri designates the writ of *habeas corpus ad testificandum* as the proper one to secure the attendance of imprisoned witnesses. R. S., 1879, sec. 4031. (4) So much of said section 4031, as excepts witnesses imprisoned for felony is unconstitutional as applied to defendants. Const. of 1875, art. 2, sec. 22; Cooley Const. Lim. [5 Ed.] 211, 55, 88; Potter's Dwarris, 182. Said statute, section 4031, was an old statute in the revision of 1865, and was

repealed by the aforesaid constitutional provision of 1875, in so far as the aforesaid statute curtailed the rights of defendant. *State ex rel. v. Holliday* uses the following strong language: "That case affords a very marked instance of an organic law, not operating on the future alone, not being merely of prospective operation, but springing into efficient being on the instant of its adoption, overturning and hurling from its pathway every antecedent inconsistent statute." *State ex rel. v. Holliday*, 64 Mo. 526 ; *Ex parte Snyder*, 64 Mo. 58 ; *State v. Williams*, 77 Mo. 310. (5) And "process to compel the attendance of witnesses in favor of the defendant" is the constitutional guaranty so plain that it is not susceptible of any other construction. "Possible, or even probable meaning, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere." Cooley Const. Lim. 55 ; Potter's Dwarris, 182. Where there is no ambiguity of language, the act itself must be looked to for the intent, and a literal construction given. *State ex rel. v. Gammon*, 73 Mo. 421–22 ; *State v. Hayes*, 78 Mo. 600 ; 2 Mo. App. 69 ; 10 Mo. App. 35.

NORTON, C. J.—On the twenty-seventh day of January, 1887, the St. Louis criminal court caused to be issued and served on petitioner the following writ :

"City of St. Louis.—ss.

"The State of Missouri, to Darwin W. Marmaduke, Warden of the Missouri State Penitentiary at Jefferson City, Missouri—Greeting : We command that you do, on Monday, January 31, 1887, at 10 o'clock, A. M., without excuse or delay, bring, or cause to be brought, before the honorable St. Louis criminal court, the body of Frederick Whitrock, by whatever name or addition he is known or called, who is detained in your custody as it is said, then and there to testify as a witness in a cause wherein the state of Missouri is plaintiff and

David S. Fotheringham is defendant, and have with you this writ, return endorsed thereon, and herein fail not at your peril. Witness, Patrick M. Staed, clerk of said court, and the seal thereof, at the city of St. Louis, this twenty-sixth day of January, A. D., eighteen hundred and eighty-seven.

[SEAL.]          "PATRICK M. STAED, Clerk."

To this writ petitioner made the following return:

"State of Missouri, }
"County of Cole.   } ss.

"Now comes Darwin W. Marmaduke, warden of the Missouri state penitentiary, and for return to the within writ says that he respectfully declines to comply with said writ by producing or having the body of said Frederick Whitrock before the said criminal court, as in said writ directed, for the reason that, as such warden, or otherwise, he has no legal authority to remove the body of said Whitrock from the state penitentiary, wherein said Whitrock is now confined under and by virtue of a judgment and sentence of said St. Louis criminal court under a sentence for a felony.

"Done at the City of Jefferson, Missouri, this the twenty-ninth day of January, 1887.

"DARWIN W. MARMADUKE,
Warden Mo. State Penitentiary."

Upon the above being made, the said criminal court on the thirty-first day of January, 1887, issued its writ of attachment, directed to the sheriff of Cole county, commanding him to arrest the petitioner, and have his body before said criminal court on the third day of February, 1887, to answer as for contempt in not obeying the first writ issued. The said petitioner was arrested by said sheriff by virtue of this writ and is by him held in custody, and it is from this imprisonment that petitioner seeks to be discharged by the writ of *habeas corpus*, issued and served on said sheriff on the first day

of February, 1887. The right of defendant to be dis-charged is mainly dependent on the question whether section 4031, Revised Statutes, is or is not a valid law. The section is as follows :

"Courts of record, and any judge or justice thereof, shall have power, upon the application of any party to a suit or proceeding, civil or criminal, pending in any court of record or public body authorized to examine witnesses, to issue a writ of *habeas corpus* for the pur-pose of bringing before such court or public body any person who may be detained in jail or prison, within the state, for any cause, *except a sentence for felony*, to be examined as a witness, in such suit or proceeding, on behalf of the applicant."

This identical statute is found in the Revised Stat-utes of 1835, section 11, page 623. It is also found in the revision of 1845, page 1089, section 13 ; also in the re-vision of 1855, volume 2, section 24, page 1582 ; also, in the General Statutes of 1865, section 22, page 588, and is carried into the Revised Statutes of 1879, as section 4031. It will be thus seen that the law, now assailed as being unconstitutional, has remained on the statute books of the state unchallenged, so far as the judicial records of the state show, for more than fifty years. By way of answer, it is stated in the brief, and was so orally argued by respondent's counsel, that, previous to, and up to, 1879, most persons who were convicted of felonies were rendered incompetent to testify as witnesses, and that the section in question, forbidding persons con-victed of felony from being taken from the penitentiary on a writ of *habeas corpus ad testificandum* into court, for the purpose of being examined as witnesses, was in-tended to apply to that class of felons who were disqual-ified as witnesses.

This is no answer, for two reasons : First, because, if the statute meant only this, there existed no reason whatever for its passage, inasmuch as without such

statute it is not to be presumed that any court would issue a writ of *habeas corpus* to bring before it a person convicted of a felony *to testify*, who, when brought, *could not testify*, by reason of such conviction disqualifying and rendering him incompetent as a witness in any case. It has grown into a maxim that a court will not do a useless thing, and it cannot be presumed that it was the intention of the legislature, in the passage of this statute, to forbid the courts from issuing this writ, when they could not have issued it without stultifying themselves. This writ of *habeas corpus ad testificandum*, under any practice, either in this country or England, never issued, except to bring a witness, competent and qualified to testify when brought, and never to bring a person who could not testify when brought, by reason of his being disqualified as a witness. The second reason is, because, while the above construction contended for gives no force to the statute, there is another construction which is reasonable and gives force and efficacy to it. It is this: that, previous to 1879, under our criminal code, a very great number of persons, who were convicted of certain classes of felonies, were not rendered, by reason of such conviction, incompetent to testify as witnesses, and it does no violence to reason to hold that it was the intention of the legislature, in enacting the section in question, while broad enough to include all who were under sentence for felony, to make it peculiarly apply to that class of felons who were not, by reason of their conviction, disqualified as witnesses.

Section 9, article 13, of the constitution of 1820, and section 18, article 1, of the constitution of 1865, provides that, "in all criminal prosecutions the accused *has* the right  *  *  * to have compulsory process for witnesses in his *favor*." In the constitution of 1875, section 22, article 2, it is provided that "in all criminal prosecutions the accused *shall have* the right  *  *  *.

to have process to compel the attendance of witnesses in *his behalf.*" The learned counsel for respondent insists that the change of the words, as found in the constitutions of 1820 and 1865, "to have compulsory process for witnesses in his favor," to the words as found in the constitution of 1875, "to have process to compel the attendance of witnesses in his behalf," has worked such a change as to give some additional right to a person criminally charged, which he did not have under the constitutions of 1820 and 1865, and a change so radical as to bring said section 4031 in conflict with the constitution, and operate as a repeal of it. While there is a change in verbiage, a change in the form of expression, the phrase, as used in the constitutions of 1820 and 1865, means the same thing as that which is used in the constitution of 1875.

Compulsory process, for a witness, signifies and means a process that will compel the attendance of such witness—a process that will bring a witness into court who refuses to come without it. And nothing is added to the force of a provision which gives the accused the right to have compulsory process for witnesses in his favor, by changing the form of expression so as to give him the right to have process to compel the attendance of witnesses in his behalf. Both forms of expression convey to the mind precisely the same meaning. In the constitutions of 1820 and 1865, the form of expression that the accused "*has* the right" to have compulsory processes for witnesses in his favor, was changed in the constitution of 1875, so as to read, "*shall have* the right to process to compel the attendance of witnesses in his behalf," and it might as well be argued that the change of the words "*has* the right" to the words "*shall have* the right," and the change of the words "witnesses in his *favor*," to "witnesses in his *behalf*," altered the meaning of the section, as to argue that the meaning of the section as contained in the constitutions

of 1820 and 1865, to have compulsory process for his wit_nesses, was either altered or enlarged by changing the form of expression so as to read, "to have process to compel the attendance of witnesses."

It, therefore, follows, from what has been said, that, if said section 4031 is invalid under the constitution of 1875, it was also invalid under the constitutions of 1820 and 1865. And, although it stood on the statute books of the state for thirty years before the constitution of 1865 was framed, and forty years before the constitution of 1875 was framed, the framers of those constitutions did not make the discovery that it was invalid, nor pro-vide against it, nor has it been, as before stated, assailed till now. I do not make this statement to give color, or countenance, to the idea that an act of the legislature which is unconstitutional at its inception, is rendered valid by having remained on the statute book, unas-sailed, for more than half a century, or to the idea that such a statute ought not, because of its antiquity, to be declared void; but to deduce, from its non-assailment for so long a time, the presumption that its unconstitu-tionality is neither so apparent, nor clear, as counsel contend it is, or else it would not, in all probability, have been reënacted through a long series of years, or remained free from attack. But, casting aside this pre-sumption, we are of the opinion that the statute in question is valid. The constitution, which confers upon a person criminally charged, the right to compulsory process for witnesses, also declares and casts upon the legislature the duty and power of enacting laws for the punishment of crimes, and, in the exercise of this power, laws have been enacted, providing that persons convicted of certain felonies shall be punished by imprisonment in the penitentiary for a term of years, in no case less than for two years. The effect of these laws is to bring together, in one place, this criminal class from all parts of the state, and aggregate them into a community

separate and distinct from all others, and now number-
ing about sixteen hundred persons. For such as these,
composed, in the main, of lawless and desperate men,
with all their civil rights suspended during the respec-
tive terms of their imprisonment, as declared by section
1667, Revised Statutes, provision must be made for their
safe keeping, and regulations made for their govern-
ment and control, and to accomplish these ends this
class of persons have been put, by the legislature, under
the control and management of a warden, deputy
warden, guards, etc., and confined in a place called the
penitentiary, with strong walls guarded by armed men
to prevent their escape in the day time, and with secure
cells, in which they are locked at night. We do not
believe that the legislature, in the exercise of the right
to make regulations for the government of this class of
convicts, transcended its power by providing, as has been
done by said section 4031, that the warden having them
in custody should not be required to take such convicts
and surrender them to the various courts of the state to
testify as witnesses. Such a regulation we do not re-
gard as unreasonable, but as one proper to be made, in
view of the fact that the thing prohibited, if allowed to be
done, would interfere with the government of such con-
victs by affording them facilities for escape, and, for the
time being, put it out of the power of the warden, the
chief and controlling officer of the penitentiary, to exer-
cise that supervisory control so essential to the manage-
ment of such a community of persons put by law in his
charge, and, besides this, it would place the convict in
such position that it would be in his power to exchange
imprisonment in the penitentiary with hard labor, to
simple imprisonment in a county jail, without labor, by
his refusal, when produced in court, to answer proper
questions, or to testify at all, in either of which events
the court could commit him to the jail of the county.

This is not an argument *ab inconvenienti*, but

is made for the purpose of showing that the regulation, made by said section 4031, is a reasonable and proper regulation, and, therefore, one within the power of the legislature to make, and that the right given to those criminally charged is, to that extent, subordinated to the power conferred upon the legislature over this class of persons. The power of the legislature to provide a penitentiary in which all persons from every portion of the state, who are, or may be, convicted of certain felonies, are to be confined, carries with it, necessarily, the power to make such regulations, for their government and detention therein, as are reasonable, and, in its judgment, necessary to keep them safely where the sentence of the court puts them. The power of the legislature to provide that all persons convicted of felony shall forever be disqualified, is undisputed, and, inasmuch as the greater includes the less, their power to provide that such persons shall not, for the time they are undergoing sentence of imprisonment in the penitentiary, be taken therefrom into the various courts of the state, logically follows and is equally indisputable, and said section 4031 does nothing more than this. The sacred right of one criminally accused to have process to compel the attendance of his witnesses, stands upon the same footing of other rights conferred and secured by the constitution, and all of them are equally sacred, and should be construed alike, and with reference to each other, so as to avoid conflict.

The constitution provides that private property shall not be taken for private use, but, notwithstanding this, we have a statute which requires railroad companies to pay to the owners of stock killed on their roads, by reason of their failure to erect fences along the sides of their road, not only the actual damage sustained, but double the amount of such damage, which is, to that extent, a taking of private property for a private use, and,

although the constitution forbids this being done, the statute has been held to be valid in several decisions of this court, notably so in the case of *Humes v. Railroad*, 82 Mo. 221, the judgment in which case was, on appeal to the Supreme Court of the United States, affirmed. In that case, twenty or thirty statutes, which have long stood upon the statute book, are grouped together, in which double and triple damages are allowed in the classes of cases specified. And what is there said with reference to these statutes, may be applied to the one under consideration. "Some of these statutes are old and historic. They are inwoven with the legislative policy of the state. Their long continuance justifies the presumption that the people and their law-makers have found them preservative of the public welfare, and a shield of just protection to private property. Why, therefore, in respect to the constitutional provision, under consideration, and others invoked in this appeal, should the framers of the constitution of 1875, representing, as they did, the whole sovereignty of the people, intend by the general language employed to sweep away all these sanctioned legislative enactments? * * * Is it not reasonable to assume that, had it been in the mind of the framers of the constitution to strike so deep into the body of the legislative branch of the government, that they would have done so by the employment of words so direct and pertinent as to have made the purpose unmistakable?"

It is provided in the constitution that when private property is taken for public use and the owner thereof is damaged thereby, that compensation therefor shall be made by the payment of the same to him, or into court for him, before his proprietary rights shall be disturbed. In the case of *Railroad v. Evans*, 85 Mo. 307, certain sections of the statute, relating to condemnation proceedings, were drawn in question as being in conflict with the constitutional provision above referred to, and the

court, speaking through Mr. Justice Sherwood, in effect, said, that constitutions are instruments of a practical nature, to be construed with the help of common sense ; that "it would be doing violence to all known rules of interpretation to assume that those who framed, or those who, by their votes, adopted, our constitution, were actuated by no intelligent purpose in that behalf. On the contrary, it must be assumed that they were familiar with the vicissitudes incident to condemnation proceedings and with the statutory provisions relating thereto." And it is further said, "As the legislature has revised the general law in regard to condemnation of land, it will be presumed that their attention was directed to the subject of the necessity of conforming that law to the constitutional provisions, and such revision must be regarded as a legislative construction of that section of the constitution under consideration, and that the general law is in conformity thereto. * * * This legislative exposition is entitled to some weight, as the authorities show, and the courts may, with some confidence, repose upon the conclusions reached by the legislature, and the statute is to be viewed *pro hac vice*, in the same light as though the legislature had enacted a new statute in compliance with constitutional requirements, and had prescribed, by law, the manner in which compensation for land taken shall be ascertained. * * * *Prima facie*, this law is constitutional, * * * and conforms, in all essential particulars, to the organic law, and the well known rule of construction applies here, that a statute is not to be presumed repugnant to the constitution, until such repugnancy is made to appear beyond a reasonable doubt. * * * 'As a conflict between the statute and the constitution is not to be implied, it would seem to follow, where the meaning of the constitution is clear, *that the court, if possible, must give the statute such a construction as will enable it to have effect.'*"

In the case before us, said section 4031 was enacted in 1835, and was a legislative construction of the constitution of 1820, in regard to compulsory process for witnesses. So it was thus construed by the reënactment of the section in 1845 and 1855. So it was thus construed in 1865, under the constitution of 1865, and, also, on the constitution of 1875, by the revision of 1879. So, that if a single legislative construction of the constitution was entitled to weight in considering the question involved in the case above cited, that weight is greatly increased when the same legislative construction has been put on a clause of the constitution for more than fifty years, and by five legislatures, at the end of each decade of ten years. So, in the case of *State v. Whitten*, 68 Mo. 92, the court held, speaking through Sherwood, J., that it was in the discretion of the court to limit the number of witnesses to be heard on an issue pending upon an application for a change of venue in said case; although it would seem that the constitutional provision, giving process to compel the attendance of witnesses, was broad enough to give him a right to all his witnesses, without reference to their number, and, yet, it was held, in the above case, that the court had the right, as it did in the case, to limit the number to six, and it may be proper to say that the reasoning contained in the opinion fully justifies the conclusion reached. What is said in the case of the *State v. Able*, 65 Mo. 357, may not be inappropriate here, to the effect that, " 'if either department of the government may slightly overstep the limits of its constitutional powers, it should be that one whose official life would soonest end. It has the least motive to usurp power not given, and the people can sooner relieve themselves of its mistakes. Herein is a sufficient reason that the courts should never strike down a statute, unless its conflict with the constitution is clear. The judiciary ought to accord to the legislature as much purity of purpose as it would claim

for itself, as honest a desire to obey the constitution, and also a high capacity to judge of its meaning.' Of course the constitution is above, and paramount to all statutes, and where there is a clear and manifest conflict between the two, the former must prevail and the latter fall."

For the reasons given, we are of the opinion that the prisoner is entitled to be discharged from his imprisonment, by the sheriff of Cole county, and he is hereby discharged, in which Judges Ray, Black, and Brace concur, Judge Brace concurring in the result and Judge Black in a separate opinion. Judge Sherwood dissents.

BLACK, J., CONCURRING.—On the application of David S. Fotheringham, who stands indicted for a felony in the St. Louis criminal court, a writ of *habeas corpus ad testificandum* was issued by that court, directed to the warden of the state penitentiary, commanding him to produce the bodies of Whitrock and Haight, two convicts, to the end that they might testify in behalf of Fotheringham. The warden declined to comply with the command of the writ, and being attached therefor he is now before this court on a writ of *habeas corpus*, asking to be released from the attachment. It seems to me there are but two questions to be considered; and that they should be determined aside from any question of inconvenience, or supposed or real detriment to the good government of the convicts in the penitentiary, for such questions address themselves to the legislature and not to the courts. The questions to be determined are : (1) Can these convicts, under the terms of existing laws, be taken from the penitentiary to the courts of original jurisdictions throughout the state for the purpose of giving their testimony ? (2) If they cannot, then are those laws forbidding it to be done constitutional ?

With respect to the first of these questions, it may be observed that, prior to the revision of 1879, persons convicted of certain felonies were thereby rendered incompetent to be sworn as witnesses, or to serve as jurors, and were disqualified from voting at any election, etc. In the revision of 1879, so much of the several sections as rendered these persons incompetent to be sworn as witnesses was dropped out. It is, thence, argued that the other sections of the statute, which were continued in force by the revision of 1879, should be so construed as to allow the convicts, not only to be sworn as witnesses during their time of imprisonment, but to be subject to writs like that issued by the criminal court in this case. An examination of the statutes will show that this subject was before the legislative mind at the revision of 1879. Section 8, of chapter 212, of the code of criminal procedure, General Statutes of 1865, provided: "Every person indicted or prosecuted for a criminal offence shall be entitled to subpoenas and compulsory process for witnesses, in like manner, and under like circumstances, as parties in civil cases." By the Revised Statutes of 1879, section 1848, the above section was amended so as to read: "Every person indicted or prosecuted for a criminal offence shall be entitled to subpoenas and compulsory process for witnesses in his behalf;" and when any convict confined in the penitentiary shall be deemed an important witness for the state upon a criminal prosecution against any other convict, then the court, or judge thereof, may issue a writ of *habeas corpus* for the purpose of bringing such person before the court to testify, and the section concludes as follows: "Such convict may be examined, and shall be considered a competent witness against any fellow-convict for any offence actually committed whilst in prison, and whilst the witness shall have been confined in the penitentiary." This amendment of the old section shows clearly that

the matter of using these convicts as witnesses was before the legislature and considered by that body, and it is for this purpose reference is made to the amend-ment at this time.

Again, section 4031, Revised Statutes, 1879, which is applicable to both civil and criminal cases, is as follows: "Courts of record, and any judge or justice thereof, shall have power, upon the application of any party to a suit or proceeding, civil or criminal, pending in any court of record, or public body authorized to examine witnesses, to issue a writ of *habeas corpus*, for the purpose of bringing before such court or public body any person who may be detained in jail or prison, within the state, for any cause, *except a sentence for felony*, to be examined as a witness in such suit or proceeding, on behalf of the applicant." It is true this section comes down through the revisions of 1855 and 1865, but there is nothing in the revision of 1879 which undertakes to repeal it, and we have seen that the legislation then had is perfectly consistent with the continued existence of the section last cited. There is, therefore, not only no statutory authority for removing a convict from the penitentiary while undergoing a sentence for a felony, for the purpose of testifying in any case other than where a fellow-convict is charged with a crime, but the right of such removal for any such purpose is clearly denied. That Whitrock and Haight are each undergo-ing a sentence for a felony is conceded.

But the next contention is, that the section of the statute last quoted is in conflict with section 22, of the Bill of Rights, which provides, among other things, that in criminal prosecutions the accused shall have the right to have process to compel the attendance of witnesses in his behalf. The same provision, though stated in different words, was a part of the former constitutions of this state, is found in the seventh amendment to the constitution of the United States, and in the constitu-

tions of many of the states.    Stinson Am. Stat. Law,
29.    This, and the other provision that the accused shall
have the assistance of counsel, are retained as safe-
guards against a return to such practices as formerly
existed in England.    Under the practice which then
prevailed the accused was not only denied, in capital
cases, the assistance of counsel, but, at one time, was not
allowed to call witnesses in his own behalf, and still
later, when permitted to call witnesses, they were not
put under oath, and hence their statements had but
little weight.    2 Story Const., sec. 1792.    These provis-
ions of the organic law are not to be disregarded upon
any pretext.    But they are to be applied within reason-
able bounds, and there are other considerations which
are not to be overlooked.    The state does not engage to
produce, or furnish a process which will produce, in
court every person who may be a witness for the defend-
ant.    The witness, when competent, may be beyond the
jurisdiction of the state, or he may be within the juris-
diction of the state and still be infirm, and in either case
cannot be brought before the court.    The state may, but
is not, by reason of the constitutional provision under
consideration, bound to assume or pay the costs and
expenses of the defendant's witnesses.    *State v. Waters,*
39 Me. 54.

The legislature may, also, determine who shall be
competent witnesses, and determine the form of the
process by which they shall be brought into court, and
make reasonable regulations with respect to the use and
method of serving the same.    It has the undoubted right
to declare that a person convicted for a felony shall be
forever incompetent to be sworn as a witness, and this
as a part of the penalty for the infraction of the law,
provided, only, that such laws are not *ex post facto,* or
retrospective; and, if it may do this, it may make the
convict an incompetent witness, while undergoing im-
prisonment; and so the legislature may prohibit his

removal from the place of confinement, for the purpose of being used as a witness. The right to have process to compel the attendance of witnesses must be limited to such persons as, by the laws of the land, are allowed to be produced. The statute before quoted applies to all cases and to all litigants, and there is no discrimination against any person charged with a crime. When the legislature removed the permanent disability to be sworn as witnesses, it had the right to, and did, prohibit them from being taken out of the place of confinement for the purpose of being used as witnesses. I, therefore, concur in the judgment discharging the warden.

SHERWOOD, J., DISSENTING. — The warden of the penitentiary was commanded, by a writ of *habeas corpus ad testificandum*, to produce the body of Frederick Whitrock before the criminal court of St. Louis, in order to testify in a cause then pending in said court, wherein the state of Missouri was plaintiff and one Fotheringham was defendant. The warden refused to obey the writ, giving as a reason that he had no legal authority to remove the body of Whitrock from the penitentiary, because he was confined therein by virtue of a judgment and sentence of the St. Louis criminal court, for a felony. Upon this refusal of the warden, the St. Louis criminal court attached him for a contempt ; and the present proceeding was instituted to determine the legality of such arrest, made by the sheriff of this county, in whose custody he now is.

In discussing the matters thus presented, I shall, first, give an outline of the writ of *habeas corpus ad testificandum*, and of instances in England and this country where this writ has been issued ; second, endeavor to ascertain whether the criminal court has jurisdiction to issue such a writ, in any case ; third, if it has such jurisdiction, to determine whether the general rule of its jurisdiction finds an exception in the circumstances

of the case at bar. And, in discussing these questions, I would not be unmindful of their grave importance, since they concern the authority and dignity of a court of record ; the duty of an officer appointed by the state to yield obedience to a writ, when lawfully issued ; the right, under the constitution, of a party accused to compulsory process for his witnesses ; and, finally, the duty of this court to obey the behests of that constitution in effectuating the right the organic law has thus conferred on the accused.

I. The writ of *habeas corpus ad testificandum* is a very ancient one, and was grantable at the discretion of the courts at common law. It was a process whereby the attendance of witnesses was compelled, and it was employed to bring the witness before the court, whether in custody awaiting trial, or when undergoing sentence. *Adams case*, 3 Keb. 51 ; *Rex v. Burbage*, 3 Burr. 1440 ; *The King v. Layer*, Fortescue's Rep. 396 ; *Rex v. Roddam*, Cowp. s. p. 672 ; 2 Tidd Prac. [9 Ed.] 809 ; Starkie on Evid. 104 ; 4 Bac. Ab. 565-6 ; 2 Phil. on Evid. 823 ; 2 Cooley's Black. 130 ; Whart. Crim. Evid., sec. 351 ; *Geery v. Hopkins*, 2 Ld. Raym. 851 ; 1 Greenl. on Evid., sec. 312 ; *Trial of Sir John Friend*, 13 Howell St. Tr. 1. And there are instances where the state courts have issued the writ in question, where the witness was in custody or undergoing sentence. The instances of the issuance of such a writ are not frequent in the state courts, but whenever they occur, or are referred to, they distinctly recognize the principle, and the undoubted right of a defendant in a criminal case to have it enforced. *Shank's Case*, 15 Abb. Pr. [N. S.] 38 ; *In re Mason*, 8 Mich. 70 ; *Koecker v. Koecker*, 7 Phila. 364. The statutes of several states expressly enforce this right of a defendant, when accused of crime, and his witness is under sentence for a crime, in the penitentiary, or elsewhere. Acts of 1881, Crim. Code of Ind., pp. 160, 161, secs. 245, 246 ; 2 Laws Ohio, Rev. 1880, sec.

7290 ; Stats. Maine, 1883, p. 805, sec. 37 ; Stats. Massa-
chusetts, 1882, p. 1070, sec. 29 ; Revised Statutes of
Missouri, 1879, sec. 4031. In the federal courts, the issu-
ance of this writ has been more frequent, and this,
regardless of whether the witnesses were federal or state
prisoners. *Ex parte Barnes*, 1 Sprague, 133 ; *Ex parte
Cabrera*, 1 Wash. C. C. 242 ; *Ex parte DeRochers*, 1
McAll. 68 ; *Ex parte Dorr*, 3 How. 104; *Ex parte Boll-
man*, 4 Cranch, 75 ; *Elkison v. Deliesseline*, 2 Wheel.
Crim. Cas. 56 ; *United States v. More*, 3 Cranch, 159.

II.   I now proceed to inquire as to the jurisdiction
of the criminal court to issue such a writ as the one in
question. Under the law of its organization, it has
" all the original and appellate jurisdiction in criminal
cases, vested in the several circuit courts of this state."
2 Rev. Stat., p. 1507, sec. 1. And, " all courts shall
have power to issue all writs which may be necessary in
the exercise of their respective jurisdictions, according
to the principles and usages of law." This law has
been on the statute book for over thirty years (1 R. S.
1855, p. 538, sec. 36 ; G. S. 1865, p. 538, sec. 17 ; R. S.
1879, sec. 1037), and, independent of any such statute,
courts, having been created for the purpose of adminis-
tering public justice, have, in consequence of their
being courts, the inherent right to effectuate their juris-
diction by all process necessary for that purpose, and
so this point was ruled in a recent case in this court.
*Yeoman v. Younger*, 83 Mo. 424. The rule being, that,
whenever power or jurisdiction is conferred, everything
necessary to make either effectual is implied. 1 Kent
Com. 463, and cas. cit. I therefore, conclude that the
criminal court had authority to issue writs of the nature
now under consideration.

III.   Passing to the third point proposed for discus-
sion : Is there anything in the circumstances or law of
this case which operates to divest the criminal court of
its general, and it must be conceded, jurisdiction, to

issue the writ in this particular instance? It is urged that this result is accomplished by section 4031, Revised Statutes of 1879, which, though it grants the issuance of the writ when the person whose attendance is desired is undergoing sentence in a trial for a misdemeanor, yet excepts out of its provisions the case of a person under "*sentence for a felony*". This section has been on the statute book over fifty years (Stat. 1835, p. 625. sec. 11; R. S. 1845, p. 1089, sec. 13; 2 R. S. 1855, p. 1582, sec. 24; G. S. 1865, p. 588, sec. 22; R. S. 1879, sec. 4031), and is always found under the title of witnesses. During that space of time, however, felons, for the most part, were absolutely incompetent to testify, and, as the law never requires the doing of a vain and useless thing, as runs a very familiar maxim, the legislature very wisely, but in a way somewhat general and obscure, excepted out of the list those persons who, if called, could not have been sworn.

But it is said that, as anterior to 1879 there were felons in the penitentiary competent as witnesses, therefore, it was the intention of the legislature, in enacting section 4031, though "broad enough to include all who were under sentence for felony, to make it *peculiarly apply to that class of felons who were not, by reason of their conviction, disqualified as witnesses.*" The details by which this conclusion is reached, are not furnished me. I shall, therefore, treat such conclusion as a mere assumption. The assertion is made, however, that it is not to be "presumed that it was the intention of the legislature to forbid the courts from issuing this writ when they could not have issued it without stultifying themselves." On this point I make this reply, that the legislature must have been singularly deficient in general information if they were not aware that courts are sometimes unfortunate in this respect. Besides, as I have already shown, the writ in question lay at common law for a witness undergoing sentence; and

it may be that the legislature were desirous of restrict-
ing the writ in its operation, and this they clearly had
the right to do, when the exercise of that right debarred
no one of a competent witness.   But the writ did go,
according to its terms, to all persons who were " detained
in jail or prison, within the state, for any cause,   *  *  *
*except a sentence for a felony."*  Now, as is well known,
petit larceny was not a felony ; that those convicted
thereof were imprisoned in the county jail, and, there-
fore, were embraced within the terms of the writ,
although not competent witnesses.   This, also, had been
the law for many years (Laws 1835, p. 178, sec. 32 ;
*Ib.,* p. 182, sec. 62 ; R. S. 1845, p. 359, sec. 35 ; *Ib.,*
p. 366, sec. 65 ; R. S. 1855, p. 577, sec. 31 ; *Ib.,* p. 586,
sec. 70 ; G. S. 1865, p. 785, sec. 27 ; *Ib.,* p. 791, sec. 66 ;
R. S. 1879, secs. 1318, 1378), so that the assertion that it
was the intention of the legislature that section 4031
should "peculiarly apply to that class of felons who
were not, by their conviction, disqualified as witnesses,"
finds no support in the statute ; and so it was just as
easy for a court, prior to 1879, to stultify itself by send-
ing its writ to the county jail for a petty larceny con-
vict, as it would have been to have stultified itself by
refusing to issue its process for a felon in the peniten-
tiary not laboring under any disability.

It seems clear to my mind, that, through some evi-
dent legislative oversight, the section in question was
made broad enough to embrace within its provisions
felons in the penitentiary who were *not* disqualified, and
also to embrace within its *literal terms,* petit larceny
convicts in the county jail, who, by express statutory
provisions, *were* disqualified.   With such obstacles in
the way of the proper construction of the statute before
me, it appears quite legitimate to look to the reason of
the statute's being enacted, and as the incompetency of a
witness is the universal ground why he is not permitted
to testify, to hold that the legislature did not intend to

stultify itself by denying process for those whose testifying capacity had not been at all abated in consequence of their conviction. I think this reasoning will "peculiarly apply" to this case, and is justified by authorities cited elsewhere in this opinion. And it is justified by authorities which hold that the letter of a statute may be enlarged or restrained, according to the true intent of the framers of the law. *Whitney v. Whitney*, 14 Mass. 92; *State ex rel. v. Emerson*, 39 Mo. 80; *State ex rel. v. King*, 44 Mo. 283; *Riddick v. Walsh*, 15 Mo. 519. In such cases, the reason of the law prevails over its letter, and general terms are so limited in their application as not to lead to injustice, oppression, or an absurd consequence, the presumption being indulged that the legislature intended no such anomalous results. 7 Wall. 482; 62 Ill. 38; 67 Mo. 256.

That the legislature intended, by the revision of 1879, to weed out of the law, as it then stood, every trace of disqualification, incident to conviction for crime, is made manifest by their industry in this regard. R. S., 1879, secs. 1378, 1416, 1467, 1485. For the purposes of this investigation, I shall use section 1378, as the type of its associate sections. Since section 4031 first became a law, important changes, as just noticed, have occurred; changes which would seem to have an important bearing in determining what force and effect that section should now possess. Such radical changes, occurring after the lapse of so many years of unbroken uniformity, would certainly appear to have, and to be intended to have, a very marked significance in determining the question now before us. During the revising session of 1879, as already seen, felons were made competent witnesses for the first time, that is, in those cases where the crimes were committed after the statute in that regard took effect, and not retrospectively; for, so it was ruled in *State v. Grant*, 79 Mo. 113; and, in a subsequent case, it was also ruled that, as to a crime

committed after section 1378 went into effect, the person convicted thereof was rendered competent, by that section, to testify. *State v. Loony*, 82 Mo. 82. And the legislature must be presumed to have been aware that the section, rendering witnesses competent, would only operate on future crimes, and not otherwise ; with this end in view, they retained section 1671, formerly section 26, page 827, of the General Statutes, rendering it necessary, in order to restore the competency of a convict as a witness, who, theretofore, had been convicted, that he should be pardoned by the governor. And this was the view taken in *State v. Grant, supra*. In a word, the legislature contemplated that, as to future crimes, the disabilities of a felon-convict should be removed, or rather, should never attach, so far as being competent as a witness is concerned. Being, however, made a witness, he became one immediately, and for all purposes.

This being the case, section 1378, in respect to the competency of a felon-convict, became at once repugnant to so much of section 4031 as excepts out of its provisions those under sentence for a felony ; for where the reason ceases, the law itself should cease. This view is in strict accordance with section 3161, Revised Statutes, 1879, which reads : " All acts, or parts of acts, of a general nature, in force at the commencement of the present session of the General Assembly, and not repealed, shall be, and the same are, hereby continued in full force and effect, unless the same be repugnant to the acts passed or revised at the present session." And this view is in accord with that of the Master of the Rolls, in *The Dean v. Bliss*, 5 Beav. 582, where he observes : " If two inconsistent acts be passed at different times, the last is to be obeyed, and if obedience cannot be observed without derogating from the first, it is the first which must give way. Every act of Parliament must be considered with reference to the state of the law subsisting when it came into operation, and when it is to be

applied; it cannot otherwise be rationally construed. Every act is made, either for the purpose of making a change in the law, or for the purpose of better declaring the law, and its operation is not to be impeded by the mere fact that it is inconsistent with some previous enactment." And this view of a partial repeal of a statute, being accomplished by a partial repugnancy to another statute, is also in accord with the authorities; the rule being that the repeal extends only so far as the repugnancy extends, and leaves all the remainder in full force. *Van Rensselaer v. Snyder*, 9 Barb. 308; *Harrington v. Trustees*, 10 Wend. 550; Bac. Abr., tit. Statutes, D.; *Bowen v. Lease*, 5 Hill (N. Y.) 225; *Williams v. Potter*, 2 Barb. 316; *People v. Deming*, 1 Hilton, 271.

Again, section 1848 reads as follows: "Every person indicted or prosecuted for a criminal offence shall be entitled to subpoenas and compulsory process for witnesses in his behalf; [and whenever any convict, confined in the penitentiary, shall be considered an important witness in behalf of the state, upon any criminal prosecution against any other convict, by the attorney general or prosecuting attorney conducting the same, it shall be the duty of the court, or judge thereof in vacation, in which the prosecution is pending, to grant, upon the affidavit of such attorney general or prosecuting attorney, a writ of *habeas corpus*, for the purpose of bringing such person before the proper court to testify upon such prosecution. Such convict may be examined, and shall be considered a competent witness against any fellow-convict for any offence actually committed whilst in prison, and whilst the witness shall have been confined in the penitentiary."] I have marked in brackets that portion of the section which was added by the amendment of 1879. This section, as will readily be noted, gives to every person indicted or prosecuted for a criminal offence, subpoenas and com-

pulsory process for witnesses in his behalf. The writ of *habeas corpus ad testificandum* was of a compulsory character, as already seen, from the authorities cited. Sections 4031 and 1848 relate to the same subject; while section 1378 designates, as among those upon whom such process may be served, a class of persons who, but for that section, would have remained incompetent as witnesses, and, therefore, not the subjects of any such process. These sections are, therefore, *in pari materia;* they were revised and adopted at the same revising session ; they relate to the same subject matter : the first two named to process whereby the attendance of witnesses is to be compelled ; the last to those upon whom such process is to operate. These sections may, consequently, be regarded as if incorporated into one statute, to be construed together as such, as much so as if ranged side by side, printed on the same page, and under the same title, in the statute book.

They were framed together as one system and have one object in view. Potter's Dwarris, 189, *et seq.*, and cas. cit. This rule applies even though some of the statutes requisite to be considered have expired, or are not so much as referred to in the other acts. 1 Kent Com., 463, and cas. cit. Even where statutes are not *in pari materia*, yet if they are enacted or revised at the same session, they are to be taken as if *in pari materia*, and to be construed accordingly. Smith's Com., sec. 641. And section 1378, being construed in connection with the other sections already quoted, and being itself a remedial section, giving a testifying capacity where none existed before, and all these sections forming but one system, and being construed together as but one statute, they are to be construed liberally ; are to receive an equitable interpretation ; whereby the letter of the act or section will be sometimes enlarged or sometimes

restrained so as more effectually to meet the beneficial end in view, and prevent a failure of the remedy. A noted illustration of this principle is found in the ruling made upon the registry acts, where, notwithstanding the strict provisions of those acts, prior registry of a deed was not allowed to countervail the effect of actual notice. 1 Kent. Com., 465, and cas. cit.; Smith Com., secs. 520, 547. In this case, I am of opinion that section 1378 in this way restrains the strict operation of section 4031, and so enlarges it as to neutralise the exception which it contains. And section 1848, as amended, is perfectly harmonious with itself; it gives to a person accused, compulsory process for his witnesses, which process, as already seen, embraces the writ in question; and such process runs to all who are witnesses; for no exceptions are made. Of course, all laws and all constitutions are confined in their operation within the boundaries of the state where enacted or ordained, as runs the maxim: "*extra territorium jus dicenti impune non paretur.*" *State v. Butler*, 67 Mo. 59.

And this is a presumption which attends all laws and all constitutions, as much so as if indorsed upon them in express terms. But surely, the fact that a law or a constitution cannot operate beyond certain boundaries forms no basis from which to argue that such law or such constitution should not operate to its fullest extent within those boundaries. The remaining portions of section 1848 confer similar, but more limited, privileges on the state; thus showing that the legislature had the whole subject in mind, and expressly gave to the state, what already had been more largely bestowed on the defendant: the process for the latter being confined to no locality and co-extensive with the boundaries of the state; the process for the former, being limited, so far as that section is concerned, to the particular instance therein mentioned, supplemented, however, by

the provisions of section 4034. And the legislature must be presumed familiar with the history, use, and meaning of the expression, "*compulsory process*," and all that the term implies. Nor is it to be forgotten that these provisions, on the part of the accused and on the part of the state, are both welded together in one section. This occurrence gives opportunity for the application of the maxim, "*noscitur a sociis*," and for the application of the rule laid down by Lord Bacon, that, "*copulatio verborum indicat acceptionem in eodem sensu.*" By coupling these provisions relating to process in the same section, it will be presumed that the legislature intended that the words employed in reference to a party accused and in reference to the state, being in such intimate connection, were to be understood in the same sense, and to have the same force and effect, at least so far as relating to convicts in the penitentiary. Smith's Com. 509.

The principle here announced was thus applied in *McNichol v. U. S. Merc. Rep. Agency*, 74 Mo. 457, where it was ruled that a certain section being amended, authorizing service on a corporation in addition to service, as formerly, on an individual, that the effect of such service on the former, was, in consequence of such amendment, the same as service on the individual. So that sections 1378 and 1848, did they stand alone, being construed together, would afford ample warrant to uphold the jurisdiction of the criminal court in this particular instance. In this connection, it is not amiss to observe what was said in the case last cited, " that it is by no means of infrequent occurrence that sections of the statute that have long outlived their usefulness, the purposes of their enactment, are, by some oversight, allowed to encumber our statute book," and it was there held that section 3497, had thus become obsolete. A similar remark, if necessary, could not inaptly be made regarding section 4031, superseded as it is, and

rendered obsolete as it is, by reason of the provisions of sections 1378 and 1848 going into operation as to crimes committed subsequent to that period. This construction would leave section 4031 in full force until the arrival of the period mentioned.

But there is another view to be taken of section 1848. If the first clause of that section, in reference to a party accused, is not to have the force and effect I claim for it, and if the second clause, in regard to process for the state, is to be taken in an exclusive sense, as it reads, without any regard to the first clause aforesaid, then this result will follow : A homicide occurs in the penitentiary ; the convict who commits it is forthwith arrested, brought forth to the jail of Cole county, and incarcerated therein. He is indicted, and about to be put on trial for his life. The state has the important witnesses, in its *own behalf*, duly brought forth to swear against him. The defendant humbly begs for similar process for other convicts in the penitentiary, to testify in his behalf, and, under the supposed provisions of section 1848, that process is denied him ; and, inasmuch as no permission is given, nor provision made, for depositions to be taken of other convicts, on his own behalf, though they were witnesses, also, of the homicide, and, as the theory goes, he has no right for process *except such as those the legislature chooses to bestow*, such depositions cannot be taken, and the defendant, in such case, though on trial for his life, and in sight of the penitentiary, which contains his witnesses, is forced into trial without any testimony whatever ! Is it necessary for me to say that such a result is *barbarous?* Such a result is what is termed, in the books, an absurdity, and " by an absurdity is meant not only that which is physically impossible, but that which is morally so. We regard that to be morally impossible which is contrary to reason, or, in other words, that which could not be attributed to a man in his right senses." Smith's Com.,

secs. 486, 518; *State v. Hayes*, 81 Mo. *loc. cit.* 585. I have, I trust, too much respect for the legislature of my state to attribute to them any intention that would, necessarily, result as above indicated. Could I believe that they had any such intention, I would regard them as *worse felons than were ever incarcerated within the walls of yonder penitentiary.*

In addition to what I have said in reference to section 4031, I have this, further, to say : If, notwithstanding the revision of 1879, and the amendment of section 1378, making felon-convicts competent as witnesses, the former section is to be regarded as in full force, then that section is in palpable violation of section 1, of the fourteenth amendment of the constitution of the United States, which forbids that any state "deny to any person the equal protection of the laws"; because that section, having the force and effect claimed for it, would grant to one defendant, tried for a crime in Cole county, a *habeas corpus ad testificandum* for a witness under sentence in the jail of that county, and, at the same time, deny to another defendant, tried in the same court, similar process, for a witness equally competent, though under sentence for felony in the penitentiary. And it does not matter that the section in question was originally valid and became unconstitutional in consequence of subsequent legislation. *State v. Hayes*, 81 Mo. 574. It has been urged that if a convict could be brought forth from the penitentiary, after having been thereto sentenced for a felony, that the effect of this bringing him forth would be to suspend, and hold in abeyance, the solemn judgment of a court. There are two answers to this objection : The first, that just the same effect is produced where a person under sentence in a county jail is brought forth to testify in a distant part of the state ; and this, it is conceded, may be done. The second answer to the objection is, that the sages of the

law did not deem this objection of any merit, as is shown by the cases cited.

It is, also, objected that the statute in question makes no provision for the *payment of fees and costs*, in bringing a felon-convict from the penitentiary, and in guarding him to and from the place of his attendance. The same objection can, also, be urged against the removal of a prisoner-witness from the county jail; and both objections may be answered in the same way, by repeating what has before been said: "That, whenever a power is given by a statute, everything necessary to the making it effectual, or requisite to attain the end, is implied." *Quando lex aliquid concedit, concedere videtur et id, per quod devenitur ad illud."* 1 Kent's Com. 464. The same objection might be urged against an attachment for a witness, under section 4022, because no provision is made for fees or costs. In relation to the position that if such a writ as the one in question should be issued, it would afford opportunities for the escape of convicts from the penitentiary, it is enough to say that the same ground of objection could, with equal reason, be urged where the prisoner is serving out his sentence in the county jail; and that the same grounds of objection, as to escape of prisoners from the penitentiary, could be urged, with like force of reasoning, where, under the provisions of section 1848, a convict is removed from the penitentiary, at the instance of the attorney-general, to attend the place of trial in a distant part of the state. So, too, it may be said that, under the provisions of that section, a convict brought forth at the instance of the state would have it "in his power to exchange imprisonment in the penitentiary, with hard labor, to simple imprisonment in a county jail, without labor, by his refusal, when produced in court, to answer proper questions, or to testify at all."

Of these arguments it suffices to say that they are but arguments *ab inconvenienti*, however much this

name be disclaimed ; arguments whose whole theory of procedure is to deny the existence of a power or jurisdiction, because such power or jurisdiction might result in its abuse. 1 Story on Const., sec. 425 ; Potter's Dwarr. 215. These considerations induce me to hold and to repeat that did this case rest merely upon statutory provisions, I am persuaded that the ordinary rules of statutory construction alone, such as are daily enforced and exemplified in the courts, would result in justifying the action of the St. Louis criminal court in issuing its writ of *habeas corpus* in the first instance, and in issuing its attachment because of disobedience of that writ.

But there are other considerations to be adverted to before quitting this subject. I refer, of course, to the constitutional provisions ; and, just on the threshold of their consideration, I am met by the opinion of the majority citing, by way of illustration and argument, some cases supposed to be analogous to the present one, cases which I will now briefly notice. I am at a serious loss to understand why the case of the *State v. Whitten*, 68 Mo. 92, should be referred to, seeing that it relates not to witnesses who are summoned to testify on the trial of a defendant, but were simply summoned to testify upon the disposition of a *preliminary motion* for a *change of venue*. Nor can I see why the case of *Humes v. Railroad*, 82 Mo. 221, should have been cited, in this connection, since it relates to the exercise of the "*police power*," as the opinion therein expressly states. I shall, therefore, content myself with simply referring to the authorities which discuss that topic. Cooley's Const. Lim. 706, *et seq.;* Potter's Dwar. 445 ; 2 Story Const., sec. 1954 ; and by saying that the police power or "the law of overruling necessity," as it is not inaptly termed, has no more bearing on the point in hand, than would be a reference to the *taxing power*.

Similar remarks are not inappropriate, touching the case of *Railroad v. Evans*, 85 Mo. 307, relating to con-

demnation proceedings and the exercise of the right of eminent domain. There, the constitution was literally complied with, by the payment of the money, assessed by the commissioners, into court for the owners, just as the constitution and law prescribed ; and we held it a reasonable construction of the constitution, where the land owners were more than willing to receive the valuation fixed by the commissioners, but the railway company insisted that such valuation was exorbitant, far exceeding any "just compensation" ; that the money paid into court should not be paid over till the exceptions filed were determined. But how can this reasonable construction, this practical construction of the constitution, a construction which, in one case upholds, conserves, and enforces a constitutional right, by all the aids of legislation, and all the adjutants of judicial experience, form the basis in another case for an argument and a ruling which, instead of supporting and protecting the right in question, *absolutely denies its constitutional existence?* To such straits are those driven who attempt to argue against a plain, fundamental right. They appreciate the difficulty without apparently being able to recognize its cause. When the owner of some frail tenement, which his hands have builded, feels it rocking upon its foundations, trembling for the safety of his structure, and relying not upon its intrinsic strength, he seeks extraneous aids ; he shores it up ; he props it. So, too, in similar circumstances, does it oftentimes happen to the builder of some argument : he resorts to the fallacious props of analogy, and endeavors to shore it up with the shop-worn platitudes of public policy and convenience. Potter's Dwarr. 215.

The constitution of our state provides that in criminal prosecutions the accused shall "have process to compel the attendance of witnesses in his behalf." Sec. 22 of Bill of Rights. This provision is, of course, co-extensive with the powers and boundaries of this state ;

wherever the power reaches, the process runs. *Not an acre of land in this state is exempt from its operation.* Mr. Justice Cooley, when treating of the force and effect of that portion of a written constitution termed a "Bill of Rights," says : " Other clauses are sometimes added declaratory of the principles of morality and virtue ; and it is also sometimes expressly declared, what, indeed, is implied without the declaration, that *everything in the declaration of rights contained, is excepted out of the general powers of government, and all laws contrary thereto shall be void.* *  *  * While they. continue in force they are to remain absolute and unchangeable rules of action and decision." Cooley Const. Lim. [5 Ed.] 46. At the time when the present constitution was adopted a large class of criminals was incompetent, as before stated ; but under the construction I have given section 4031, the process therein provided for would go as well for convicts in the penitentiary, not convicted for certain kinds of felony, as it would go for all convicts in the county jail, not convicted of petit larceny, and not detained for a species of felony, the sentence for which, under the terms of the statute, rendered the party incompetent to testify. And, under the revision of 1879, those convicts, both in the county jail and in the penitentiary, who were convicted after that revision went into effect, became competent witnesses, by force and effect of section 1378 and its associate sections, revised in that year. So, that under the operation of the sections last mentioned, *all* the convicts, who were convicted of crimes after the revision of 1879 went into effect, were competent as witnesses, and, therefore, amenable to process as such.

But grant that I am wrong in my construction of section 4031, when considered apart from other sections, or when considered and construed in connection with them, does it thence follow that a party accused is bereft of his constitutional right of process for his wit-

nesses? I trow not. *That right is reared so high that all the legislatures in the land cannot pull it down.* To admit that the legislature by hostile action or by non-action, can balk the operation of a constitutional right, is to place organic rights on the same level with rights granted by legislation; to elevate the creature on the throne of its creator; to go counter to that axiom of law and of logic, that the controlling power cannot be controlled by its inferior or subordinate. Potter's Dwarris, 671. I illustrate this by supposing that the legislature should, on to-morrow, by an act with an emergency clause, repeal all laws for the issuance and service of process in criminal prosecutions. Can it be doubted that the right of a party accused would remain in full force, and be capable of enforcement? To deny this would be to assert the bold and broad proposition that a constitutional right depends on the *will of the legislature,* to be granted or withheld, as to them shall seem meet. If such a proposition be true, what becomes of the statement of Judge Cooley, "*that everything in the declaration of rights contained is excepted out of the general powers of government, and all laws contrary thereto shall be void*"?

If such a proposition be true, what becomes of those observations of that eminent jurist, Chief Justice Marshall, when discussing a similar provision in the constitution of the United States? He said: "The right of an accused person to the process of the court to compel the attendance of witnesses, seems to follow, necessarily, from the right to examine those witnesses; and, wherever the right exists, it would be reasonable that it should be accompanied with the means of rendering it effectual. * * * The eighth amendment to the constitution gives to the accused, 'in all criminal prosecutions, a right to a speedy and public trial, and to compulsory process for obtaining witnesses in his favor.' The right given by this article must be deemed sacred by the

courts, and the article should be so construed as to be
something *more than a dead letter.*" 1 Burr's Trial,
178, 179.

Whenever a constitutional right exists, it carries
with it, as an inevitable consequence, the means of its own
enforcement.   Bishop Stat. Crim., sec. 137, and cas. cit.
Whenever a constitutional right comes in contact with
a statute, the former tolls the latter; and whenever a
constitutional right, such as is now under discussion, has
no statute specially adopted to enforce it, by its own
inherent potency, and leaning not on the adventitious
aids of statutory regulation, it supplies the lack of
statutory provisions, and enforces itself.   A striking
exemplification of the latter form of constitutional
operation is afforded in *Johnson's case*, 1 Greenl. [Me.]
230.   Johnson had been prosecuted for a criminal offence
before a justice of the peace and convicted.   He de-
manded an appeal, but as the statute had made no
provision for one, the justice refused to grant it; but
when the prisoner was brought before the Supreme Court
of Maine on *habeas corpus*, that court said : "The right
*   *   *   in this state, is placed on a more durable basis
than the pleasure of the legislature.   The constitution
of Maine, article one, section six, declares that, 'in all
criminal prosecutions, the accused shall have a right
*   *   *   to have a speedy, public, and impartial trial
*   *   *   by *a jury of the vicinity.*'   In order to give
effect to this provision, the accused must, of necessity, be
entitled to an appeal from a sentence of a justice of the
peace, who tries without the intervention of a jury, to
the circuit court of common pleas, where a trial by jury
may be had."

Applying the principle just announced to the case
at bar, it is wholly immaterial whether I have correctly
construed section 4031, when considered by itself, or
when considered in connection with the other sections
already noticed.   The history of the struggle for the

establishment of the right now demanded at the hands of this court, is a dark and bloody history. While that eventful struggle was in progress, some of the most gallant spirits that this earth has ever witnessed, perished because of a denial of the very right here claimed, and here also denied. I, therefore, dissent from the conclusion which has been announced.